**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

```
STATE OF MISSOURI; STATE OF      *
GEORGIA; STATE OF ALABAMA;       *
STATE OF ARKANSAS; STATE OF      *
FLORIDA; STATE OF NORTH          *
DAKOTA; and STATE OF OHIO,       *
                                 *
     Plaintiffs,                 *
                                 *
         v.                      *    CV 224-103
                                 *
UNITED STATES DEPARTMENT OF      *
EDUCATION; MIGUEL A. CARDONA,    *
in his official capacity as      *
Secretary, United States         *
Department of Education; AND     *
JOSEPH R. BIDEN, JR., in his     *
official capacity as President   *
of the United States,            *
                                 *
     Defendants.                 *
```

## O R D E R

Before the Court is Defendants' motion to dismiss for improper venue (Doc. 37). For the following reasons, Defendants' motion is **GRANTED IN PART.**

### I. BACKGROUND

On September 3, 2024, Plaintiffs filed a complaint for declaratory and injunctive relief. (Doc. 1.) Simultaneously, they filed a combined motion for stay, preliminary injunction, and temporary restraining order ("TRO"). (Doc. 5.) On September 5,

2024, the Court granted Plaintiffs' motion for TRO and temporarily restrained Defendants from implementing the Third Mass Cancellation Rule (the "Rule"), mass cancelling student loans, forgiving any principal or interest, not charging borrowers accrued interest, or further implementing any other actions under the Rule or instructing federal contractors to take such actions. (Doc. 17, at 5.)  On September 18, 2024, the Court held a hearing on the motion for preliminary injunction (Doc. 5), motion to dismiss (Doc. 37), and motion for clarification of TRO (Doc. 38). (Doc. 48.)  On September 19, 2024, the Court extended the September 5, 2024 TRO for an additional fourteen days to consider the Parties' briefs and arguments presented during the hearing.  (Doc. 49.)  After a thorough review of the Parties' arguments, both written and oral, the Court reaches the following conclusions.

## II. DISCUSSION

The preliminary issues the Court must address are standing and venue, as raised by Defendants in their motion to dismiss. (Doc. 37.)  As the Court found in its September 5, 2024 Order, "[t]his suit may proceed '[i]f at least one plaintiff has standing.'" (Doc. 17, at 3 (quoting Biden v. Nebraska, 143 S. Ct. 2355, 2365 (2023)).)  The Court found Missouri had standing through the injury suffered by its instrumentality, the Higher Education Loan Authority of the State of Missouri ("MOHELA").  (Id. at 3-

2

4.)  The Supreme Court and Eleventh Circuit have made clear that when injunctive or global relief is sought, all parties can remain in a suit so long as one party has standing.  See Biden, 143 S. Ct. 2355; Ouachita Watch League v. Jacobs, 463 F.3d 1163 (11th Cir. 2006).  However, these cases have not addressed concerns of venue.  Defendants move to dismiss this case for lack of venue, arguing Georgia lacks Article III standing, so venue is improper in this District.  (Doc. 37, at 9-15.)  Defendants argue Georgia should be dismissed for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1), and that this case should be dismissed without prejudice for lack of venue under Rule 12(b)(3). (Id.)  In response, Plaintiffs assert Georgia has standing, but because Missouri's standing is so clear, the Court need not inquire into Georgia's standing.  (Doc. 45, at 17-22.)  The Court is reluctant to move forward without exploring Defendants' concerns with venue.  In order to do so, the Court must first address Georgia's standing and then address venue.

**A. Georgia's Standing**

Georgia asserts standing on the basis that under Georgia tax law, an individual's taxable state income is based on their federal taxable income or federal adjusted gross income as a baseline. (Doc. 1, at 27 (citing O.C.G.A. § 48-7-27(a)).)  While federal taxable income normally includes student loan discharge, that input was removed under the American Rescue Plan Act of 2021 for

3

student loan debt discharged before January 1, 2026.  (Id. at 27-28 (citing 26 U.S.C. §§ 61(a)(11), 108(f)(5)).)  Because student loan debt will not be taxed in 2024 or 2025, Georgia asserts it must either accept the lost tax revenues caused by loan forgiveness under the Rule, or change its state tax law for determining an individual's taxable state income.  (Id. at 28.)  Thus, Georgia alleges it faces sovereign injury from the Rule sufficient to establish standing.  (Id.)

Standing requires a plaintiff to allege such a personal stake in the outcome of a controversy as to justify the exercise of the Court's remedial powers on its behalf.  Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 438 (2017) (citation omitted).  "Article III standing requires a plaintiff to have suffered an injury in fact, that is fairly traceable to the challenged conduct of the defendant, and that is likely to be redressed by a favorable judicial decision."  Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC, 26 F.4th 1235, 1240 (11th Cir. 2022) (citations and quotation marks omitted and alterations adopted).  "An injury in fact must be concrete, particularized, and actual or imminent." Id. (citation and quotation marks omitted).

Defendants argue Georgia's alleged basis for standing is insufficient because the harm is self-inflicted and results from its own decision to tie its state income-tax laws to the Internal Revenue Code ("IRC").  (Doc. 37, at 10 (citing Pennsylvania v. New

4

Jersey, 426 U.S. 660, 664 (1976)).) Further, they argue that a federal policy's incidental effects on state tax revenues are not judicially cognizable injuries, but only remote and indirect harms. (Id. at 11 (citing Florida v. Mellon, 273 U.S. 12, 18 (1927)).) Defendants also assert that Georgia's theory of reduced tax revenues is too attenuated or speculative to establish standing because the hypothesized loss of tax revenues in 2026 is not certain or impending. (Id. at 12.) Thus, Defendants argue Georgia's standing theory depends on a speculative chain of possibilities. (Id. at 13.) Finally, Defendants argue Georgia retains its sovereign interests in full, and it cannot create standing based on an alleged pressure to change its state tax law. (Id.)

In response, Georgia argues its harm is not self-inflicted because it tied its taxation to the federal law years before Defendants announced this Rule, and to eliminate the injury, Georgia would have to change its laws. (Doc. 45, at 18.) Georgia argues that forcing it to choose between an economic harm and changing its laws creates a sovereign injury. (Id.) Further, Georgia argues Pennsylvania reflects this principle because the case only concerned the Supreme Court's original jurisdiction and not Article III standing. (Id. at 18-19.) As to Florida, Georgia argues a "direct injury" was required hundreds of years ago and is no longer required, and courts regularly permit parties to sue

5

based on indirect loss of tax revenue. (Id. at 21.) Under Wyoming v. Oklahoma, 502 U.S. 437 (1992), Georgia argues loss of specific tax revenues creates standing and establishes standing here. (Id. at 17-18.)

While the Eleventh Circuit has not addressed this issue in the context of federal student loan forgiveness, several courts across the country have. The United States District Court for the District of Kansas (the "Kansas Court") addressed this issue earlier this year. Kansas v. Biden, No. 24-1057, 2024 WL 2880404, at *16 (D. Kan. June 7, 2024). The Kansas Court found "in general, reduced state tax revenue [does not] qualify as an injury in fact sufficient to confer standing on a state" because "[a] state must show a fairly direct link between the state's status as a recipient of revenues and the legislative or administrative action being challenged." Id. at *17 (citations and quotation marks omitted). It found the "fairly direct link" was missing because the states' decreased tax revenue is an incidental harm since the debt forgiveness program does not target plaintiffs or their tax policies. Id. (citation omitted). Thus, the Kansas Court reasoned the harm was distant and incidental, but also suffered a traceability problem because the debt forgiveness plan did not cause plaintiffs' injuries, but their own tax policies did. Id. The facts at issue are identical aside from looking at the enforcement of a different rule.

6

The United States District Court for the Southern District of Indiana (the "Indiana Court") addressed a similar issue in 2022. Garrison v. Dep't of Educ., 636 F. Supp. 3d 935 (S.D. Ind. 2022). In this case, the plaintiffs were individuals instead of states, but the Indiana Court found the federal government's student loan relief program did not injure the plaintiffs, the state legislative decision did. Id. at 937. It reasoned that "[a]n injury is not traceable to the decision of a defendant where the injury flows from a different, independent decision made by a third party." Id. at 940 (citation omitted). The Indiana Court held that "where there is nothing but a state's independent, discretionary decision to create harm, the federal government cannot be the cause of plaintiff's injuries in the constitutional sense." Id. (citation and quotation marks omitted and alterations adopted). It relied on the Supreme Court's decision in Pennsylvania to hold Indiana, not the Department of Education, made the decision to impose a higher tax burden, and its decision caused the plaintiffs' injuries, not the federal debt relief program. Id. at 940-41 (citations omitted).

The Court finds both decisions illustrative to the facts here considering the Supreme Court's decision in Pennsylvania. As the Supreme Court held, the injuries to the states "were self-inflicted, resulting from decisions by their respective state legislatures" and "[n]o State can be heard to complain about damage

7

inflicted by its own hand." 426 U.S. at 664. While the Pennsylvania decision was made in a different context, and addressed the original jurisdiction of the Supreme Court instead of Article III standing, the principle is unavoidable as both require an injury to the states. Georgia, on its own accord, adopted the IRC into its state income-tax laws. Thus, any loss of state income-tax that Georgia alleges is caused by the Rule's forgiveness of debt is tied to Georgia's own legislative decisions. As the Kansas Court pointed out, "[n]othing requires [Georgia] to use the federal definitions of taxable income." Kansas, 2024 WL 2880404, at *18. Thus, the Rule does not create an injury by affecting Georgia's ability to decide its own tax law. See id. (citing Garrison, 636 F. Supp. 3d at 942). As such, the Court agrees that any alleged injury that may result from a loss of state income-tax revenue was self-inflicted by Georgia's laws and is insufficient to establish standing.

Additionally, standing "requires the plaintiff to show that the alleged injury is not merely 'remote and indirect' but is instead fairly traceable to the actions of the defendant." Texas v. United States, 86 F. Supp. 3d 591, 622 (S.D. Tex. 2015) (citing Florida, 273 U.S. at 18). In Florida, the state of Florida challenged a federal inheritance tax because under Florida law, no inheritance tax was allowed, so Florida argued the federal tax would prompt the "withdrawal of property from the state," causing

8

Florida to lose subjects of taxation. 273 U.S. at 16-17. The Supreme Court found Florida lacked standing because there was no *direct injury* as the result of the enforcement of the federal act. Id. at 18. The Supreme Court found the "anticipated result [was] purely speculative, and, at most, only remote and indirect." Id. (citation omitted).

Here, implementation of the Rule will potentially forgive student debt in 2024 and 2025 when it is not taxable under the current state of federal law. (Doc. 1, at 28.) As such, Georgia asserts it will miss out on the income-tax revenue it would receive on these student loans if they were cancelled or paid off starting in 2026. (Id.) First, there is no guarantee that people would not pay off their student loans in 2024 and 2025 absent implementation of the Rule. Georgia relies on people paying off their loans starting in 2026 when the income would be taxable; however, there is no indication that people would wait until 2026 or later to pay off their loans absent the Rule. As a result, the alleged harm of missing out on income-tax is, like in Florida, too speculative.

Furthermore, the Rule is not being implemented as a target to states or their tax policies, so like in Kansas, the states' decreased tax revenue is an "incidental" harm. 2024 WL 2880404, at *17. Georgia fails to allege the Rule is implemented to attack states or their tax policies. Instead, Plaintiffs allege the

9

Rule's purpose is to forgive or cancel hundreds of billions of dollars in student loans. (Doc. 1, at 13, 17.)  Thus, there is no indication that the Rule is being implemented to attack the states or their income taxes, so any loss of revenue that may result from loss of tax revenue is incidental and insufficient to create standing for Georgia.

For these reasons, the Court finds Georgia lacks standing because it failed to show an injury that is concrete, particularized, actual, or imminent, and is traceable to the Rule. Glynn Env't Coal., 26 F.4th at 1240.  Without standing, the Court finds it proper to dismiss Georgia as a party to the suit for lack of subject matter jurisdiction and turns to Defendants' arguments related to venue.

**B. Venue in Georgia**

Because this suit is brought against an agency of the United States, venue is governed by 28 U.S.C. § 1391(e)(1) which holds a civil action can

> be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

Plaintiffs alleged venue is proper in this District because Georgia is a resident of this judicial district.  (Doc. 1, at 6.)

10

Defendants argue that since Georgia lacks standing, venue is improper in this District. (Doc. 37, at 14.) The Court agrees.

Without standing, Georgia cannot provide the proper venue for suit because a plaintiff that lacks standing cannot create venue where it would not otherwise exist. Miller v. Albright, 523 U.S. 420, 427 (1998). The Court finds the most equitable result is to transfer the case to a district in which venue is proper. Pursuant to 28 U.S.C. § 1406(a), when venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." Courts generally have broad discretion in determining whether to transfer or dismiss a case. Pinson v. Rumsfeld, 192 F. App'x 811, 817 (11th Cir. 2006) (citation omitted).

Based on Plaintiffs' reliance on MOHELA as its primary basis for standing, the Court finds the most equitable transfer would be to the United States District Court for the Eastern District of Missouri. Given Missouri's clear standing based on the injuries the Rule brings to MOHELA, the Eastern District of Missouri is a district in which suit could have originally been brought. The Court finds transfer in the interest of justice, instead of dismissal, because based on the Supreme Court's ruling in Biden, one plaintiff with standing is sufficient for a suit to proceed. 143 S. Ct. at 2365. Thus, the Court finds it unfair for Plaintiffs' case to be dismissed for Georgia's standing issues simply because

11

Defendants decided in this case to raise venue concerns, when they waived the issue by not raising it in other cases dealing with federal student loan forgiveness.  See Kansas, 2024 WL 2880404.

### III. CONCLUSION

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' motion to dismiss (Doc. 37) is **GRANTED IN PART**. Georgia shall be **DISMISSED** as a party to this suit.  Further, the Clerk is **DIRECTED** to **TRANSFER** this case to the United States District Court for the Eastern District of Missouri.

**ORDER ENTERED** at Augusta, Georgia, this 2nd day of October, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA