## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

STATE OF MISSOURI,
STATE OF ALABAMA
STATE OF ARKANSAS,
STATE OF FLORIDA,
STATE OF NORTH DAKOTA,
STATE OF OHIO, and

     *Plaintiffs*,

v.

JOSEPH R. BIDEN, Jr., in his official
capacity as President of the United States,

MIGUEL A. CARDONA, in his official
capacity as Secretary, United States
Department of Education, and

UNITED STATES DEPARTMENT OF
EDUCATION,

     *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 24-cv-1316
**EMERGENCY TRO requested by end of
day, October 4.**

**If necessary, TRO hearing requested as
soon as possible.**

### PLAINTIFF STATES' MEMORANDUM IN SUPPORT OF THEIR
### EMERGENCY MOTION FOR A STAY OR IN THE ALTERNATIVE A
### TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

Twice before transferring this case, the original district court entered TRO relief,
concluding (1) that Missouri clearly has standing to challenge Defendants' third attempt in two
years to mass cancel hundreds of billions of dollars in student loans, and (2) that the Plaintiff States
are likely to succeed on the merits. ECF 17; ECF 49. And at a hearing on September 18,
Defendants conceded (1) that they plan to mass forgive student loans as soon as 72 hours after a
TRO expires and (2) that they have already altered contracts of student loan servicing organizations
to force those organizations to do so. Hearing Tr. 37, 40 (Sept. 18, 2024) (attached as Exhibit 1).
The second TRO expires **today**. The previous district court said it was going to issue an order by

today determining whether to extend the TRO or instead to convert the TRO into a preliminary injunction. Hearing Tr. 59:13–14. Yet yesterday afternoon, the district court that originally heard this case transferred the case to this Court, finding that Georgia lacked standing, and so venue was improper in Georgia. ECF 52 at 11.

The upshot is that without immediate relief from this Court, Defendants will unlawfully mass cancel up to hundreds of billions of dollars in student loans as soon as Monday—despite a district court already twice concluding that the States are likely to succeed on their claims and despite Defendants choosing to provide *no* statutory defense in briefing or at oral argument. The Court should at the very least grant an administrative stay or TRO to give the Court more time to become familiar enough with this case to issue a ruling on Plaintiff States' fully briefed and fully argued motion for TRO or preliminary injunctive relief, ECF 5. *See Texas v. Dep't Homeland Sec.*, No. 6:24-cv-00306 (E.D. Tex., Aug. 26, 2024), ECF 27 (granting "administrative stay" to "preserve the status quo pending prompt review of an agency's action") (attached as Exhibit 2). Plaintiff States are also happy to appear for argument at any moment to assist the Court.

Because the issues are already fully briefed and argued, Plaintiff States simply provide a summary of the case and existing briefing to help orient the Court to what has occurred in this case since it was filed exactly one month ago. The briefing can be found at ECF 5 (States' opening brief), ECF 35 (Defendants' response), and ECF 45 (States' response).

## SUMMARY OF THE CASE

This case concerns Defendants' *third* attempt in two years to mass cancel student loans. The Eighth Circuit blocked the first two attempts, and the Supreme Court both times rejected Defendants' attempts to lift the Eighth Circuit's injunctions. *Biden v. Nebraska*, 143 S. Ct. 2355 (2023) (First Mass Cancellation); *Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024) (granting

injunction pending appeal against Second Mass Cancellation); *Biden v. Missouri*, No. 24A173 (Aug. 28, 2024) (denying Secretary's request to vacate that injunction). This third attempt is the weakest one yet. As Defendants have not disputed, the Secretary rests his assertion of authority to cancel "all or part of any debts," 89 Fed. Reg. 27,565, on a statutory theory expressly rejected by President Biden, former Speaker of the House Pelosi, Congress, and even the Department itself just three years ago. ECF 5 at 8.

Exactly one month ago, on September 3, 2024, Plaintiff States sued to block the Third Mass Cancellation attempt after learning that Defendants were unlawfully planning to mass cancel up to hundreds of billions of dollars through cloak and dagger. Specifically, the States obtained documents revealing that even though Defendants were telling the public that the rule would be published in October (with forgiveness not occurring until at least December given the requirement under federal law to wait to implement until at least 60 days after publication, 5 U.S.C. § 801), Defendants had in fact already altered contracts with loan servicing organizations, compelling them to begin forgiving up to hundreds of billions of dollars on September 9, which Defendants described as the forgiveness "surge" date. *See* ECF 45 at 3–4; Hearing Tr. 25–26; ECF 1-12 at 2 ("In September of 2024, the Biden-Harris Administration *will* launch the Federal Student Loan Debt Initiative." (emphasis added)); *id.* at 6 (identifying September 9th as the "surge" date for forgiveness).

Tellingly, Defendants have never denied any of this. Given the opportunity at a lengthy hearing, Defendants never denied their plans to secretly forgive billions in loans on September 9. To the contrary, in briefing, they acknowledged "the Department's intention to promulgate a final rule in early September," ECF 35 at 17, and admitted at the hearing that they fully intended to forgive loans just 72 hours after that, Hearing Tr. 40. They also admitted that in June they altered

the contracts of federal loan servicing organizations to "contractually obligate" them to forgive loans as soon as the Secretary of Education instructed them to do so. Hearing Tr. 37. In other words, Defendants always planned to publish their rule on Friday, September 6, and to mass forgive loans the next business day (September 9)—before anybody had time to sue. The only reason they did not succeed is because the Plaintiff States, in the last week of August, obtained documents revealing this scheme.

The Southern District of Georgia had no trouble granting an immediate TRO in light of the documentary evidence. On September 5, the Southern District of Georgia issued a 14-day temporary restraining order, finding that "Plaintiffs have standing and successfully satisfy the elements for issuance of a TRO." ECF 17 at 3. Specifically, the court held that (1) "[t]he Rule harms Plaintiff State of Missouri through financial injury to its instrumentality, [MOHELA]," which is one of the organizations that services federal student loans, and that (2) "Plaintiffs show a substantial likelihood of success on the merits given the Rule's lack of statutory authority, and the Secretary's attempt to implement a rule contrary to normal procedures." *Id.* at 4. Moreover, the court found Plaintiffs "will suffer irreparable injury" if the Third Mass Cancellation goes into effect, while "Defendants' only potential harm is a pause in implementing the Rule." *Id.* Thus, the court concluded that issuance of a temporary restraining order would "preserve the status quo." *Id.* at 5.

Following that Order, the parties conducted expedited briefing. Plaintiff States argued (among other things) that the Secretary's assertion of "authority to waive *all* or part of *any* debts," 89 Fed. Reg. 27,565 (emphasis added), was fundamentally contrary to the Supreme Court's conclusion that "Congress opted to make debt forgiveness available *only* in a few particular exigent circumstances," *Biden v. Nebraska*, 143 S. Ct. at 2369 (emphasis added), and flouted the major

questions doctrine. ECF 5 at 30–35. The States also pointed out that the Secretary's statutory argument for his third attempt to mass cancel loans failed and was (unsurprisingly) the weakest of the three attempts. *Id.* at 35–41. That explained why the Secretary was trying to forgive through cloak and dagger. He knew that "the States cannot turn back the clock on any loans that have already been forgiven," *Missouri v. Biden*, 112 F.4th 531, 538 (8th Cir. 2024), so he elected to surreptitiously forgive loans faster than anybody could sue.

Defendants chose not to provide any substantive statutory defense of their third attempt to mass cancel loans. Instead, they pressed procedural defenses—principally (1) that venue in Georgia was improper, and (2) that the Third Mass Cancellation Rule was not "final" because it was not published—even though Defendants' declarant *admitted* that the Department had already changed the contracts of MOHELA and other loan servicing organizations to "contractually obligate" them to forgive loans under the Third Mass Cancellation Rule. ECF 35; Hearing Tr. 37 (conceding the contracts were altered in June); ECF 35-1 ¶ 30 (forgiveness requirement has "already been modified into the contract").

The States responded (ECF 45) that the Rule *was* final because it was not "tentative" and because it was a decision "by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes Co., Inc. v. U.S. Army Corps of Engineers*, 782 F.3d 994, 999 (8th Cir. 2015), *aff'd*, 578 U.S. 590 (2016). This was true because Defendants had already altered the contracts of loan servicing organizations (altering rights and obligations) and because, the next business day after altering those contracts, Defendants informed the loan servicers that they needed to prepare for a September 9th "surge" date because "[i]n September of 2024, the Biden-Harris Administration *will* launch the Federal Student Loan Debt Initiative." ECF 1-12 at 2, 6 (emphasis added). The documents revealed that Defendants had already chosen to forgive

loans and were already in the process of *implementing* that final decision. *E.g.*, ECF 1-4 ("FSA [Federal Student Aid] is in the process of implementing additional types of loan forgiveness for borrowers. Multiple additional types of forgiveness are being implemented with the requirements listed below ….").

The States also pointed out that even if the Rule were not final, the court could still enter temporary relief under the All Writs Act and what the Supreme Court has referred to as "incidental equitable jurisdiction." These two sources of authority create "judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *Arrow Transportation Co. v. Southern Railway Co*., 372 U.S. 658, 671 n.22 (1963). This power is "incidental to the courts' jurisdiction to review final agency action." *Id*. A "court's incidental equitable jurisdiction," the D.C. Circuit has said, "gives the court authority to impose a temporary restraint in order to preserve the status quo *pending ripening* of the claim for judicial review." *Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987) (emphasis added). *See also ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978) ("A federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established. When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it.").

In response to this argument, Defendants conceded the Supreme Court has established this doctrine but downplayed it as an old doctrine from "decades" ago. Hearing Tr. 51. In fact, however, courts regularly and recently rely on this doctrine. Just in August, a court relied on that doctrine to temporarily block a federal regulation. Ex. 2, *Texas v. Dep't Homeland Sec.*, No. 6:24-cv-00306 (E.D. Tex., Aug. 26, 2024), ECF 27 at 2 ("The authority for an administrative stay arises

from the All Writs Act and a court's inherent authority to manage its docket. … It has long been accepted that a court's authority under the All Writs Act includes ordering temporary, injunctive relief to preserve the status quo pending prompt review of an agency's action through existing channels."

After an oral argument on September 18, where Defendants conceded that they fully intended to violate 5 U.S.C. § 801 by forgiving loans 72 hours after publication rather than 60 days,[1] the Southern District of Georgia again determined that a TRO was justified. The court said it would enter another TRO to give the court time to determine whether "extending a restraining order for an even longer period of time" or entering a "preliminary injunction" made most sense. Hearing Tr. 59:13–14. The following day, September 19, 2024, the court found "good cause exists to extend the temporary restraining order currently in place" for an additional 14 days. ECF 49 at 1–2. That extension expires at the end of the day **today**, October 3, 2024.

Just yesterday, October 2, 2024, the Southern District of Georgia issued a ruling concluding that transfer of the case to this district was proper. The Court concluded that Plaintiff State Georgia lacked standing, so venue was improper in the district. ECF 52. The Court continued that "[g]iven Missouri's *clear standing* based on the injuries the Rule brings to MOHELA, the Eastern District of Missouri is a district in which suit could have originally been brought," and thus transferred the case to this Court. *Id.* at 11–12. The Southern District of Georgia did nothing to alter its previous two conclusions that Plaintiff States are likely to succeed on the merits. Plaintiffs' Motion for

---

[1] In addition to violating 5 U.S.C. § 801, Defendants' decision to forgive loans just 72 hours after publication also violates 20 U.S.C. § 1089(c)(1), which grants loan servicing organizations authority not to implement a rule promulgated under the Higher Education Act until July 1 of the subsequent year.

Stay/Preliminary Injunction/Temporary Restraining Order (ECF 5) remains pending and fully before this Court.

## CONCLUSION

The current temporary restraining order recognized that the States established "a substantial likelihood of success on the merits given the Rule's lack of statutory authority, and the Secretary's attempt to implement a rule contrary to normal procedures." ECF 17 at 4. An extension of that order would provide this Court with an opportunity to gain familiarity with the facts and law of this case, and allow for the Court to consider the outstanding motion for preliminary injunction or temporary injunctive relief before Defendants implement the Third Mass Cancellation Rule and cause irreparable harm to Plaintiff States. Plaintiff States respectfully request that this Court at the very least extend relief (*e.g.*, through an administrative stay, statutory stay,[2] or temporary restraining order) to give the Court more time to become familiar with the case. Otherwise, Defendants will be poised to take imminent action to irreparably cancel up to hundreds of billions of dollars in student loans by as soon as Monday.

---

[2] The APA expressly enables this Court "to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. "This APA provision authorizes reviewing courts to grant relief pending review." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 668 n.4 (D.C. Cir. 2016). The stay power under § 705 thus authorizes broader relief than traditional equitable remedies against officials. "[A]n injunction is a judicial process or mandate operating in personam." *Nken v. Holder*, 556 U.S. 418, 428 (2009). "By contrast, instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself"—or, in this case, against the administrative proceeding itself. *Id*.

Date: October 3, 2024

**ANDREW BAILEY**
**Attorney General of Missouri**

/s/ Joshua M. Divine
Joshua M. Divine
   *Solicitor General*
Reed C. Dempsey
   *Deputy Solicitor General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
josh.divine@ago.mo.gov
reed.dempsey@ago.mo.gov

**TIM GRIFFIN**
**Attorney General of Arkansas**

/s/Nicholas Bronni
Nicholas J. Bronni
   *Solicitor General*
Dylan L. Jacobs
   *Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-3661
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

**STEVE MARSHALL**
**Attorney General of Alabama**

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
   *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130-0152
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

Respectfully Submitted,

**ASHLEY MOODY**
**Attorney General of Florida**

/s/James H. Percival
James H. Percival
   *Chief of Staff*
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

**DREW H. WRIGLEY**
**Attorney General of North Dakota**

/s/ Philip Axt
Philip Axt
   *Solicitor General*
North Dakota Attorney General's Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
pjaxt@nd.gov

**DAVE YOST**
**Attorney General of Ohio**

/s/ T. Elliot Gaiser
T. Elliot Gaiser
   *Solicitor General*
Mathura J. Sridharan
   *Deputy Solicitor General*
Office of the Attorney General
365 East Broad Street
Columbus, Ohio 43215
Phone: (614) 466-8980
thomas.gaiser@ohioago.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 3, 2024, a true and accurate copy of the foregoing was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, consistent with Federal Rule of Civil Procedure 5(b)

I further certify that the foregoing document contains 2,268 words and 8 pages, exclusive of matters designated for omission, as counted by Microsoft Word.

/s/ *Joshua M. Divine*

*Counsel for Plaintiff State of Missouri*
*Lead Counsel for Plaintiff States*