UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:24-cv-00306

**State of Texas et al.,**
*Plaintiffs,*
v.
**United States Department of Homeland Security et al.,**
*Defendants.*

# ORDER

In this case, 16 States challenge a final rule recently issued by the Department of Homeland Security that creates a process for granting "parole in place" under the immigration laws to a certain subset of aliens who are unlawfully present in the country. DHS, *Implementation of Keeping Families Together*, 89 Fed. Reg. 67,459 (Aug. 20, 2024). Familiarity with that rule is presumed.

Plaintiffs move for a temporary restraining order, a preliminary injunction, and a stay of the rule's implementation. Doc. 3. Defendants move for jurisdictional discovery, a stay of briefing, and a scheduling order. Doc. 9. Lastly, 12 parties move to intervene as defendants, two of them pseudonymously. Doc. 15. The court now enters (1) temporary, equitable relief for 14 days, renewable for good cause or upon consent, and (2) a case schedule ordering expedited proceedings on preliminary and permanent relief. Defendants' motion for discovery and a case schedule (Doc. 9) is granted to the extent specified here and otherwise denied. Plaintiffs' motion (Doc. 2) to expand page limits is granted to the extent specified below. All other motions remain pending.

1. **Administrative stay of parole issuance under the rule**

Temporary, injunctive relief based significantly on case-administration needs is sometimes called an "administrative stay." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring) (distinguishing between a stay pending a court of

EXHIBIT 2

appeals' final judgment in a case and a "temporary administrative stay" that reflects a "first-blush judgment about the relative consequences of [blocking agency action, by a stay of an injunction against it] versus allowing it to go into effect"). When considering such a stay in that posture, the traditional four factors governing preliminary relief lasting through final judgment are "obviously on the court's radar" and can thus "influence the stopgap decision, even if they do not control it." *Id.* at 799. But there is no "one-size-fits-all test that courts apply before entering" such an administrative stay. *Id.* Instead, "as a flexible, short-term tool," the remedy is a "prelude to the main event" of a ruling that fully considers the four factors for a injunction lasting through final judgment (essentially the same as the four factors for an injunction in a final judgment, but assessed at a different point in time). *Id. See generally eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (reciting the four-factor, equitable test for a permanent injunction).

The authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket. *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring) (citing Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1942 (2022)). The All Writs Act authorizes federal courts to issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law. 28 U.S.C. § 1651(a).

It has long been accepted that a court's authority under the All Writs Act includes ordering temporary, injunctive relief to preserve the status quo pending prompt review of an agency's action through existing channels. *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (citing authority such as *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942)); *see, e.g.*, *Nat'l Treas. Emps. Union v. King*, 961 F.2d 240, 245 (D.C. Cir. 1992) (ordering a three-month administrative stay after balancing the need for proceedings against the possibility of irreparable loss during lengthy litigation); *Astrazeneca Pharms. LP v. Burwell*, 197 F. Supp. 3d 53, 59

(D.D.C. 2016) (entering a temporary restraint on an agency's release of its decision to "provide a brief window for judicial review while imposing the smallest possible effect on the FDA's usual processes and the rights and expectations of all of the parties to the proceeding").

In that way, an administrative stay has similarities to a temporary restraining order, whose function is to "preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." Charles Alan Wright et al., *Federal Practice and Procedure* § 2951 (3d ed.). Speed of adjudication is obviously of importance to both an administrative stay and a TRO. *Cf. Granny Goose Foods, Inc. v. Teamsters Local No. 70*, 415 U.S. 423, 439 (1974) (noting that, if TROs are issued without notice to the opposing parties, they "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer").

If a TRO is issued without notice to the opposing party (i.e., ex parte), then Federal Rule of Civil Procedure 65(b) limits the duration of the order to an initial period of 14 days. In contrast, when the opposing party has notice of the motion for a TRO, Rule 65(b) does not apply. But courts often apply the 14-day durational limit as a sound exercise of judicial discretion when the focus is on allowing time to adequately prepare for a hearing. Wright, *supra*, at § 2951.

Here, the court sees fit to issue an administrative stay. As in the *United States v. Texas* stay litigation cited above, the court has undertaken a first-blush review of the merits of plaintiffs' standing and cause of action in light of the evidence submitted with their motion for a TRO and a stay. The claims are substantial and warrant closer consideration than the court has been able to afford to date. That conclusion is particularly based on the need to analyze (1) whether parole "into" the United States, 8 U.S.C. § 1182(d)(5)(A), includes entry by aliens who are already in this country, as opposed to at or beyond the border; and (2) the rule's

possible misapprehension of the legal standard in focusing on significant public benefit from "this process," 89 Fed. Reg. at 67,475 (identifying perceived policy benefits from a new process for gaining LPR status that is less burdensome than the statutory depart-and-apply-abroad process for non-parolees), rather than whether a specific alien's lawful presence in the country would have public, as opposed to private, benefit that is significant. *See generally id.* at 67,475 (stating a goal of the rule's process as "removing a barrier to an immigration benefit" of LPR status, and thus focusing on judgments about Congress's policies rather than how a particular alien's presence in the country achieves significant benefit to the public); *id.* at 67,476 (setting the parole term as three years based simply on allowing enough time to complete other immigration process); *id.* at 67,479 (defining the costs of the rule not to include educational costs borne by the States on the theory that the relevant aliens are already present in the country and attending school, even though the agency's premise for rulemaking is that, without the rule, some of those aliens would depart the country to apply for admission abroad).

The court does not, however, express any ultimate conclusions about the success or likely success of those claims. As with most administrative stays, the court has simply undertaken a screening, "first-blush" review of the claims and what is at stake in the dispute. *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring).

Just as important to the court's analysis is preserving its jurisdiction to enter complete relief for plaintiffs should their lawsuit ultimately prove meritorious, without losing the chance for complete relief by taking the time necessary to fully consider the merits or likely merits of this action. Plaintiffs' theory of harm sounds in costs that they will bear from the continued unlawful presence of aliens, some of whom would depart the country to pursue consular process abroad without the parole-in-place rule. That is a two-step theory of causation: the rule affects a certain subset of aliens, and that subset's action or inaction then imposes cognizable costs on the plaintiff States.

Affording relief on that theory of causation would seem to require negating the parole benefit possible under this rule. And the court does not presently perceive how to practicably unwind parole once issued to an alien, given that the grant of that benefit occasions reliance interests such as applications for work authorization and in some cases adjustment of status. Accordingly, preserving the court's ability to grant full relief to plaintiffs (or as full as is practicable at this time) seems to require enjoining the agency from granting parole under the rule's process for a short time, to allow review of plaintiffs' entitlement to at least preliminary injunctive relief controlling through entry of final judgment. The court therefore orders such an administrative stay.

At the same time, the agency's mere acceptance of applications for "parole in place" under the rule and its mere issuance of a form for seeking that benefit do not seem to pose the same practical risks of irreversibility as would the actual grant of parole in place. So this administrative stay does not apply to the agency's creation of a process for *seeking* parole in place under the rule, as opposed to the *granting* of parole in place under the rule.

The burdens to the opposing parties of this temporary, administrative stay do not tip the equities the other way. As noted, aliens will still be able to apply for parole in place under the rule during this short stay. And given that spouses who may seek relief under this rule have, by definition, not left the country during the past ten years, the court perceives a minimal risk that requiring them to wait a short, additional period will cause a departure from the country during this short stay. A similar prediction applies to stepchildren who may be eligible under the rule.

An administrative stay and a temporary restraining order (assuming that they are doctrinally separate) must last only as long as needed to promptly decide on the plaintiff's entitlement to relief controlling through final judgment. In an exercise of its discretion, the court will initially limit this stay to 14 days. That stay may be extended for a like period, however, for good cause or if all

adverse parties consent to a longer extension. *See* Fed. R. Civ. P. 65(b)(2).

The court enters below an expedited schedule for the discovery that defendants seek on standing and for resolving the merits of this action. The discovery schedule proposed by defendants would not conclude until October 23, 2024. Doc. 9 at 3. The court's schedule below is even more expedited. The court thus expects that good cause may exist to extend this administrative stay for additional periods through mid-October and that, indeed, the parties may consent to such an extension. But any such extension will be considered in due course.

**2. Scheduling order**

The court now enters the following deadlines to control the progression of this case.

**a.** The Fifth Circuit has directed that any forum disputes should be the "top priority" in handling a case. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). Consistent with that guidance, the court sets the following schedule for early presentation of any forum-related matters:

- August 28, 2024—Deadline to file any motions related to venue or forum.
- August 30, 2024—Deadline to respond to any such motion.
- September 2, 2024—Deadline to reply on any such motion.

**b.** The court sets the following schedule for resolution of the proper parties in this lawsuit:

- August 28, 2024—Deadline for any motions to intervene and motions to proceed pseudonymously. The pending motions need not be re-filed.
- August 30, 2024—Deadline to respond to any such motion.

- September 2, 2024—Deadline to reply on any such motion.

**c.** The court has a duty to establish "early and continuing control so that the case will not be protracted because of lack of management." Fed. R. Civ. P. 16(a)(2). It appears to the court that the merits of plaintiffs' claims present only legal disputes about agency action, making this "an action for review on an administrative record" exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1)(B)(i).

It also appears to the court that, just as initial disclosures are dispensed with, no other discovery is necessarily occasioned by plaintiffs' causes of action because (1) there was no notice-and-comment process that would add to the administrative record materials beyond those in the rulemaking and (2) any data underlying the agency's decision and not appearing in the Federal Register publication of the final rule would be immaterial to plaintiffs' challenges, which turn on the agency's published rationale. *See Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 440 n.37 (5th Cir. 2001) (stating that statutory construction is "a task which we are competent to perform without the administrative record").

The court appreciates, however, that defendants seek discovery into factual matters that may bear on plaintiffs' standing. And the court appreciates that, if the pending motion for intervention is granted, the intervenors-defendants may seek to share in that discovery.

The court's impression is that any discovery on factual matters related to standing can reasonably be conducted within a short time if the court opens discovery for 21 days and is available to rule promptly on discovery disputes. The court thus authorizes the parties to begin discovery now pursuant to Federal Rule of Civil Procedure 26(d)(1). The court limits the notice and response periods for discovery under Federal Rules of Civil Procedure 27–36 from 21 and 30 days to 5 calendar days. The parties

are ordered to immediately confer on discovery and reach all necessary agreements to complete discovery by September 16, 2024.

The deadline to complete service of process or file a waiver of service of process under Federal Rule of Civil Procedure 4 is September 6, 2024. Parties are reminded of the background duty to avoid the unnecessary expenses of serving the summons. *See* Fed. R. Civ. P. 4(d). Under Federal Rule of Civil Procedure 12(a)(1), any answer by defendants or intervenors-defendants is due by September 9, 2024.

The court also believes that this is an appropriate case to "advance the trial on the merits and consolidate it with the hearing" on the motion for a preliminary injunction, under timing that does not unduly delay resolution of the request for injunctive relief. Fed. R. Civ. P. 65(a)(2). The court has used that procedure in prior litigation. And both Texas and the federal government have elsewhere expressed their openness to that procedure in litigation in a similar posture. *See* Tr. of Feb. 21, 2023 Mot. Hr'g (Doc. 69) at 6–7, *Texas v. DHS*, No. 6:23-cv-00007 (S.D. Tex.). The court therefore gives notice of that consolidation. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The administrative record shall be prepared and served by September 9, 2024.

Because summary judgment is very often "the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review," *Cottage Health Sys. v. Sebelius*, 631 F. Supp. 2d 80, 90 (D.D.C. 2009), the court gives notice under Federal Rule of Civil Procedure 56(f)(3) that it will consider summary judgment granting permanent relief (whether a declaration, an injunction, an order setting aside the rule, or relief in defendants' favor) on the same schedule as it considers plaintiffs' motion for a preliminary injunction. Plaintiffs' motion for leave to file excess pages (Doc. 2) is granted, and plaintiffs are also allowed until September 17, 2024, to supplement and replace their pending motion for a preliminary injunction (Doc. 3) with additional briefing and attachments pertinent to summary judgment, including any

"parts of [the administrative record] cited by" plaintiffs in support of judgment in their favor. 5 U.S.C. § 706. Any such supplemented motion shall address both preliminary relief and permanent relief (on summary judgment or at a bench trial) and shall not exceed 60 pages, exclusive of any parts of the administrative record relied on and of any other attachments. Both parties are excused from Local Rule CV-56(a)'s statements.

Defendants are allowed until September 26, 2024, to file briefing on plaintiffs' request for preliminary relief and a motion and responsive briefing on summary judgment in favor of either party. Any such motion and briefing seeking or opposing preliminary or permanent relief must be filed in a single document also not to exceed 60 pages, exclusive of any parts of the administrative record relied on and of any other attachments. All parties represented by the same counsel may not file more than one such document.

Plaintiffs are then allowed until October 3, 2024, to respond and reply on those matters, in a single document not to exceed 30 pages. And defendants are allowed until October 10, 2024, to file any reply in support of summary judgment in their favor, which also must not exceed 30 pages. All parties represented by the same counsel may not file more than one such document.

The court will set an expedited hearing on preliminary relief and summary judgment, and if necessary a consolidated bench trial, on a date as soon as possible after completion of that briefing. That should allow for prompt, efficient resolution of the case before any significant burden from the administrative stay. This order may be modified on any party's motion for good cause that accounts for any consent to extend the administrative stay.

*So ordered by the court on August 26, 2024.*

J. CAMPBELL BARKER
United States District Judge