# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

STATE OF MISSOURI, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,

    *Defendants.*

Case No. 4:24-cv-01316-MTS

## MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

STEPHEN M. PEZZI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 5

I.   This case is moot ................................................................................................................ 5

II.  No mootness exception applies. ........................................................................................ 6

    a.  Voluntary Cessation ..................................................................................................... 6

    b.  Capable of Repetition Yet Evading Review ................................................................ 8

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ...................................................................................................................5

*Arizonans for Official Eng. v. Arizona,*
  520 U.S. 43 (1997) ...................................................................................................................5

*Biden v. Nebraska,*
  600 U.S. 477 (2023) .................................................................................................................9

*Cnty. of Mille Lacs v. Benjamin,*
  361 F.3d 460 (8th Cir. 2004) .................................................................................................10

*Davis v. Anthony, Inc.,*
  886 F.3d 674 (8th Cir. 2018) ...................................................................................................2

*FBI v. Fikre,*
  601 U.S. 234 (2024) ............................................................................................................ 6, 8

*In re Murray Energy Corp.,*
  788 F.3d 330 (D.C. Cir. 2015) .................................................................................................1

*Lewis v. Continental Bank Corp.,*
  494 U.S. 472 (1990) .................................................................................................................9

*Mille Lacs Band of Ojibwe v. Madore,*
  128 F.4th 929 (8th Cir. 2025) ............................................................................................ 6, 8

*Missouri v. Biden,*
  128 F. 4th 979 (8th Cir. 2025) ........................................................................................... 4, 5

*Missouri v. Dep't of Educ.,*
  No. CV 224-103, 2024 WL 4069224 (S.D. Ga. Sept. 5, 2024) ..............................................9

*Missouri v. Dep't of Educ.,*
   No. 4:24-cv-01316-MTS, 2024 WL 4426370 (E.D. Mo. Oct. 3, 2024)..................................9

*Moore v. Thurston,*
  928 F.3d 753 (8th Cir. 2019) ...................................................................................................6

*Noem v. Haaland,*
  41 F.4th 1013 (8th Cir. 2022) ..................................................................................................6

*Ohio v. EPA,*
  969 F.3d 306 (6th Cir. 2020) ...................................................................................................6

*Osborn v. United States*,
   918 F.2d 724 (8th Cir. 1990)..............................................................................................2

*Prowse v. Payne*,
   984 F.3d 700 (8th Cir. 2021)..............................................................................................7

*Public Citizen, Inc. v. FERC*,
   92 F.4th 1124 (D.C. Cir. 2024).......................................................................................6, 8

*Resurrection Sch. v. Hertel*,
   35 F.4th 524 (6th Cir. 2022)......................................................................................6, 8, 9

*Spencer v. Kemna*,
   523 U.S. 1 (1998)................................................................................................................8

*Troiano v. Supervisor of Elections*,
   382 F.3d 1276 (11th Cir. 2004).........................................................................................7

*Twin Cities Safety, LLC v. Moe*,
   139 F.4th 1015 (8th Cir. 2025)..........................................................................................6

*United States v. Sanchez-Gomez*,
   584 U.S. 381 (2018)............................................................................................................5

## **Constitution**

U.S. Const. art. III, § 2, cl. 1...................................................................................................5

## **Statutes**

5 U.S.C. § 553............................................................................................................................1

20 U.S.C. § 1098a.....................................................................................................................1

## **Rules**

Fed. R. Civ. P. 65(b)(2)............................................................................................................3

## **Regulations**

Dep't of Educ., *Negotiated Rulemaking Committee; Public Hearing*,
   88 Fed. Reg. 43,069, (July 6, 2023)..............................................................................10

Dep't of Educ., *Notice of Proposed Rulemaking: Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans)*,
   89 Fed. Reg. 27,564 (April 17, 2024)..............................................................................2

Dep't of Educ., *Notice of Proposed Rulemaking: Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program*,
   89 Fed. Reg. 87,130 (Oct. 31, 2024).................................................................................4


Dep't of Educ., *Student Debt Relief: Withdrawal of Notice of Proposed Rulemaking and Termination of Rulemaking Proceeding,*
   89 Fed. Reg. 104,939 (Dec. 26, 2024) .................................................................................... 4, 5

Dep't of Educ., *Student Debt Relief Based on Hardship: Withdrawal of Notice of Proposed Rulemaking and Termination of Rulemaking Proceeding,*
   89 Fed. Reg. 104,934 (Dec. 26, 2024) .................................................................................... 4, 5

**<u>Other Authorities</u>**

Dep't of Educ., *Press Release: U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan* (Dec. 9, 2025),
   https://perma.cc/3J85-E8LN ................................................................................................... 5, 6

**INTRODUCTION**

The complaint in this case challenges a now-withdrawn notice of proposed rulemaking (NPRM) issued during the Biden Administration. Although it is black-letter administrative law that courts "do not have authority to review proposed agency rules," *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (Kavanaugh, J.), this suit was nonetheless premised on the extraordinary theory that, even before publication of any final rule, the Department of Education secretly intended to engage in mass student debt cancellation based on legal authority in a *proposed* rule. That premise was mistaken: as the agency later confirmed in two sworn declarations, it never "discharged any loans pursuant to the authorities it proposed" in any NPRM, it never "instructed servicers to discharge any loans" under that proposal, and even "[a]bsent the temporary restraining order, the Department would not have issued forgiveness specified in the proposed rules without first finalizing the rules." First Decl. of James R. Kvaal ¶¶ 33-34, ECF No. 35-1. Nevertheless, the U.S. District Court for the Southern District of Georgia entered a temporary restraining order. ECF Nos. 17, 49. And after a transfer to the Eastern District of Missouri, this Court issued a short order converting that TRO into a preliminary injunction. ECF No. 57. Defendants did not appeal.

Whether or not this Court (or the Southern District of Georgia) had jurisdiction at the time of those prior orders, the world looks very different now. The Department of Education has now formally withdrawn both potentially relevant notices of proposed rulemaking, meaning it cannot finalize a rule relating to loan forgiveness without first complying with all applicable requirements of negotiated rulemaking under the Higher Education Act, and notice-and-comment rulemaking under the Administrative Procedure Act. *See* 20 U.S.C. § 1098a; 5 U.S.C. § 553. In addition, the Department of Education has also agreed, as part of a settlement of separate litigation, to notify the Attorney General of Missouri, thirty days in advance, "[a]ny time that Defendants plan to or have reason to believe that they will cancel or forgive more than $10 billion in federal student loans within a one-month period." That obligation will provide Missouri with ample notice to seek judicial review of any future extraordinary loan-cancellation effort of the sort that Plaintiffs feared here.

Currently, however, there is no live dispute. So this case should be dismissed as moot.

1

# BACKGROUND[1]

In July of 2023, the Department of Education began a negotiated rulemaking process to explore whether it would be appropriate to propose new regulations "relate[d] to the modification, waiver, or compromise of Federal student loans"; in other words, student-debt relief (SDR). *See* Dep't of Educ., *Negotiated Rulemaking Committee; Public Hearing*, 88 Fed. Reg. 43,069, 43,069-70 (July 6, 2023). That process eventually continued with the publication, in April of 2024, of a notice of proposed rulemaking. That NPRM included a series of proposed regulations that would—if finalized in that form—govern how the Secretary of Education would exercise authority to "waive" certain debts held by the Department of Education. Dep't of Educ., *Notice of Proposed Rulemaking: Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans)*, 89 Fed. Reg. 27,564 (April 17, 2024) ("SDR NPRM"). In addition to laying out proposed regulatory text, the notice of proposed rulemaking detailed public comments the agency received after the negotiated rulemaking process, explained changes to the proposed rule that it made during that process, and solicited further comments. *See id.*

That notice of proposed rulemaking did not, of course, actually change any regulations, nor have any legally binding effect on the Department of Education, regulated parties, or on anyone—it was, as its name reflects, merely a *proposed* rule. Nevertheless, on September 3, 2024, Plaintiffs filed this lawsuit in the Southern District of Georgia. The complaint alleged that "the States have just uncovered documents proving that the Secretary of Education . . . is unlawfully trying to mass cancel hundreds of billions of dollars of loans." Compl. ¶ 1. Plaintiffs' complaint further alleged "that the States have just obtained documents proving that the Secretary is implementing this plan *without* publication and has been planning to do so since May" of 2024. *Id.* ¶ 5. The U.S. District Court for the Southern District of Georgia (Hall, J.) quickly entered a temporary restraining order, ECF No. 17, before the United States had filed any opposition brief.

---

[1] "The district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)." *Osborn v. United States*, 918 F.2d 724, 728 n.4 (8th Cir. 1990). "Questions of mootness are matters of subject-matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018).

The critical allegation on which the TRO was premised, however—that is, "that the Secretary [was] implementing this plan *without* publication" of a final rule, Compl. ¶ 5—was inaccurate. As was ultimately explained in two sworn declarations from senior officials at the Department of Education, the agency never "discharged any loans pursuant to the authorities it proposed" in that proposal, it never "instructed servicers to discharge any loans" under those authorities, and even "[a]bsent the temporary restraining order, the Department would not have issued forgiveness specified in the proposed rules without first finalizing the rules." First Kvaal Decl. ¶¶ 33-34; *accord* Second Kvaal Decl. ¶¶ 6-7, 12-13, ECF No. 78-1. Plaintiffs' mistaken understanding was seemingly based on a misinterpretation of (admittedly complex and confusing) documents that Missouri obtained from loan servicers through state freedom-of-information requests. Compl. ¶¶ 5, 83.

On September 10, 2024—one week after the lawsuit was filed—Defendants filed a motion to dismiss for improper venue. ECF No. 37. After extending his TRO order another 14 days, ECF No. 49, Judge Hall ultimately agreed that venue was improper in the Southern District of Georgia and thus granted (in part) Defendants' motion to dismiss. ECF No. 52. Instead of dismissing the suit entirely, however, Judge Hall transferred this case to the Eastern District of Missouri, ECF Nos. 52, 53, where it was assigned to this Court, Order of Oct. 3, 2024.

The day of that assignment to this Court—October 3, 2024—was also the "twenty-eighth and final day of [the] temporary restraining order entered" by Judge Hall. Mem. & Order at 1, ECF No. 57; *see also* Fed. R. Civ. P. 65(b)(2). Accordingly, that same day, this Court entered a short order "extend[ing] the restraining order into a preliminary injunction." Mem. & Order at 2. Defendants did not appeal that preliminary injunction, and the deadline to do so has long since expired.

On October 16, 2024, Defendants filed another motion to dismiss for improper venue, reasserting one of the two arguments from their original (successful) motion, which Judge Hall had not addressed in his opinion transferring this case to the Eastern District of Missouri. ECF No. 64.

On October 31, 2024, the Department of Education published another notice of *proposed* rulemaking about student debt relief—similar in some respects to the SDR NPRM that originally gave rise to this suit, but this time focused on debtors facing "hardship." *See* Dep't of Educ., *Notice of*

3

*Proposed Rulemaking: Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program*, 89 Fed. Reg. 87,130 (Oct. 31, 2024) ("Hardship NPRM").

After the 2024 election, citing some online news articles and the Hardship NPRM, Plaintiffs made a filing with this Court expressing their "concern" that Defendants might be "preparing to evade this Court's preliminary injunction to effectuate a mass forgiveness program before Defendant Biden leaves office." Pls.' Mot. for Court to Order Statement of Compliance at 4, ECF No. 76. Plaintiffs thus requested that this Court order Defendants to "promptly submit a Notice of Compliance with the preliminary injunction attesting that they are not planning to implement forgiveness of Direct Loans based on Section 432(a) of the HEA." *Id.* at 5.

Defendants filed a response two days later, explaining that Plaintiffs' concerns were unfounded. That filing included a sworn declaration explaining why Plaintiffs' concerns lacked any factual basis, and noting that one of the articles Plaintiffs had relied upon had since been retracted because "the core premise of the article [was] false." Defs.' Resp. at 4, ECF No. 78; *see also* Second Kvaal Decl., ECF No. 78-1. This Court has not ordered Defendants to file any further statement.

On December 26, 2024, the Department of Education formally withdrew both notices of proposed rulemaking. *See* Dep't of Educ., *Student Debt Relief: Withdrawal of Notice of Proposed Rulemaking and Termination of Rulemaking Proceeding*, 89 Fed. Reg. 104,939 (Dec. 26, 2024); Dep't of Educ., *Student Debt Relief Based on Hardship: Withdrawal of Notice of Proposed Rulemaking and Termination of Rulemaking Proceeding*, 89 Fed. Reg. 104,934 (Dec. 26, 2024).

After President Trump's second inauguration, the parties engaged in settlement discussions. During those discussions, the Court denied Defendants' second motion to dismiss for improper venue. ECF No. 95. Ultimately, the parties were able to settle another student-loan-related lawsuit in the Eastern District of Missouri—also brought by Missouri, as well as Arkansas, Florida, Georgia, North Dakota, Ohio, and Oklahoma—in which the States had (successfully) challenged a separate loan-related action issued during the Biden Administration. *See* Settlement Agreement, *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo. Dec. 9, 2025), https://perma.cc/6W9W-TLET; *see also Missouri v. Biden*, 128 F. 4th 979 (8th Cir. 2025) (affirming entry of a preliminary injunction against the SAVE

Plan). In this case, however, settlement negotiations have now concluded without success. *See* Joint Status Report, ECF No. 92; Joint Status Report & Proposed Schedule, ECF No. 109.

Defendants now move to dismiss.

## ARGUMENT

### I. This case is moot.

The Constitution limits the federal courts' jurisdiction to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review." *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). Thus, a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). A case has become moot when "the parties lack a legally cognizable interest in [its] outcome." *Already*, 568 U.S. at 91 (citation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.*

Here, there is no longer any live dispute. Most obviously, that is because both notices of proposed rulemaking that gave rise to this lawsuit have now been formally withdrawn. *See* 89 Fed. Reg. 104,939; 89 Fed. Reg. 104,934. Neither proposal was finalized in any form. The agency has not taken (and is not taking) any steps to issue any other similar proposed rules. Nor is there any reason to speculate that any such proposal (much less final rule) is coming any time soon, if ever. To the contrary, the Department of Education has been working to undo the major policy initiatives of the Biden Administration, at least when it comes to mass cancellation of student-loan debt. *See, e.g.*, Joint Mot. for Entry of Final Judgment, ECF No. 91, *Missouri v. Trump*, No. 4:24-cv-520-JAR (Dec. 9, 2025); Dep't of Educ., *Press Release: U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan* (Dec. 9, 2025), https://perma.cc/3J85-E8LN.

As a result, none of the injuries alleged in Missouri's complaint are currently in need of any remedy. And none of the relief requested in Missouri's complaint could now be ordered by this Court.

5

Put simply, there is no "Third Mass Cancellation Rule" to be "enjoined" or "postponed" or "restrained" or "vacate[d]" or "set aside." Compl., Prayer for Relief ¶¶ (a)-(g). That is so whether or not Plaintiffs were correct to argue that such a "Third Mass Cancellation Rule" existed at the time of the complaint—even if it did, such a "rule" certainly does not exist now. So this case is moot.

## II. No mootness exception applies.

In rare circumstances, exceptions to the mootness doctrine may permit a court to continue exercising jurisdiction over a case even when the challenged conduct has ceased. *Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1020 (8th Cir. 2025) (per curiam). For example, a defendant's voluntary cessation of challenged conduct may not moot a case where there is a "'reasonable expectation' that the challenged policy will recur." *Id.*; *accord FBI v. Fikre*, 601 U.S. 234 (2024). Or a dispute may be "capable of repetition yet evading review." *Noem v. Haaland*, 41 F.4th 1013, 1016 (8th Cir. 2022). Neither exception applies here.

**a. Voluntary Cessation.** The Eighth Circuit has explained that an exception to mootness applies where a burden "can be reasonably expected to recur after the defendant voluntarily ceased imposing it." *Moore v. Thurston*, 928 F.3d 753, 757 (8th Cir. 2019). For this standard to be satisfied, "there must be a fair prospect that the conduct will recur in the foreseeable future," *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020), and the potential recurrence would need to be "similar enough" to the challenged conduct "to present substantially the same legal controversy" as the original suit, *Resurrection Sch. v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2022) (en banc) (quotation omitted). This exception to mootness "is grounded in concerns that a party may be manipulating the judicial process through the false pretense of singlehandedly ending a dispute." *Public Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (quotation omitted); *accord Fikre*, 601 U.S. at 241 (describing mootness doctrine as an effort to ensure that federal jurisdiction is not "readily manipulated").

The standard for applying this exception is "stringent." *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025) (quotation omitted). Indeed, the Eighth Circuit has observed that when "government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Prowse v. Payne*, 984 F.3d 700, 703

6

(8th Cir. 2021) (quoting *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004)).

The voluntary-cessation exception does not apply here. The Department of Education has formally withdrawn both potentially relevant notices of proposed rulemaking. And, in any event, the core premise on which this lawsuit was based was factually mistaken: despite Plaintiffs' concerns, "[a]t no time did the Department anticipate or intend servicers to discharge loans . . . pursuant to the proposals in the" NPRMs at issue here. Second Kvaal Decl. ¶ 24; *id.* ¶ 13 ("Even absent the temporary restraining order and preliminary injunction, the Department never planned to issue forgiveness specified in the hardship NPRM before finalizing the rule."); *id.* ¶ 7 (same, for the SDR NPRM). So, now that even those *proposed* rules have been withdrawn, it is doubly clear that Plaintiffs' unfounded concerns are not going to be realized—either now, or in the future.

Were there any doubt, the Department of Education has now firmly disavowed the general policy attitude toward student-loan forgiveness that led to the original publication of those proposed rules during the Biden Administration, as well as other prior efforts at mass debt cancellation. For example, a recent press release from the Department of Education sharply criticized the Biden Administration's approach to these issues:

> "For four years, the Biden Administration sought to unlawfully shift student loan debt onto American taxpayers, many of whom either never took out a loan to finance their postsecondary education or never even went to college themselves, simply for a political win to prop up a failing Administration," said Under Secretary of Education Nicholas Kent. "The Trump Administration is righting this wrong and bringing an end to this deceptive scheme. The law is clear: if you take out a loan, you must pay it back. Thanks to the State of Missouri and other states fighting against this egregious federal overreach, American taxpayers can now rest assured they will no longer be forced to serve as collateral for illegal and irresponsible student loan policies."

Dep't of Educ., *Press Release: U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan* (Dec. 9, 2025), https://perma.cc/3J85-E8LN. And in an op-ed published in *the Wall Street Journal*—co-authored by the Under Secretary of Education and the Missouri Attorney General—the parties jointly stated that we are entering "a new era for student loans" reflecting "[t]he end of unlawful debt cancellation schemes"—in order to "restore the principle that

7

loans must be paid back." N. Kent & C. Hanaway, Opinion: *The Era of Illegal Student Loan Forgiveness Is Over*, THE WALL STREET JOURNAL (Dec. 9, 2025).

Under these circumstances, it is indisputable that the Department of Education's "cessation of the challenged conduct" is "genuine," rather than some strategic manipulation of the judicial process. *Resurrection Sch.*, 35 F.4th at 529 (quotation omitted); *cf. Public Citizen*, 92 F.4th at 1128 (explaining that "courts have declined to apply the [voluntary cessation] doctrine when the facts do not suggest any arguable manipulation of our jurisdiction"). Accordingly, the actions challenged here "cannot reasonably be expected to recur," *Fikre*, 601 U.S. at 241, now that agency leadership has explicitly disavowed the policy approach that was chartered in the proposed rule.

To the extent that Plaintiffs are concerned that a future Secretary of Education might one day, far-off in the future, take a different policy approach, that sort of speculation about distant future events cannot save this case from mootness. As the Eighth Circuit put it recently: "[a] speculative possibility is not a basis for retaining jurisdiction over a moot case." *Madore*, 128 F.4th at 941.

Even if the Department of Education retains some authority to enact some new debt-cancellation-related policies, there is no reason to think that any hypothetical future policy would mirror the actions challenged here. To the contrary, any hypothetical future policy would arise in different factual circumstances, would be justified based on a different administrative record, and could be implemented in many different ways, which would result in a materially distinct legal analysis. That is especially so where, as here, the original theory animating this suit was already so atypical.

**b. Capable of Repetition Yet Evading Review.** Nor is this case subject to the exception from mootness for cases that are capable of repetition yet evading review. That "doctrine applies only in exceptional situations, . . . where the following two circumstances are simultaneously present": first, there must be "a reasonable expectation that the same complaining party will be subject to the same action again"; and second, the challenged action must be "in its duration too short to be fully litigated prior to cessation or expiration." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). This case fails both conditions.

First, "for largely the same reasons" that the voluntary cessation exception is inapposite, there is no reasonable expectation that plaintiffs will be subject to the same challenged action again.

8

*Resurrection Sch.*, 35 F.4th at 530. The Department of Education is not likely to engage in any mass loan cancellation any time soon, if ever—and, more importantly, certainly not based on a now-withdrawn proposed rule. And the policy challenged here "was a product of" specific circumstances and administrative priorities, and "plaintiffs' objections to it are grounded in the [policy]'s particulars." *Id.* This Court is thus "unlikely to see *this* [dispute] in a similar form again." *Id.* (emphasis added). That is so even if a future Secretary takes a different attitude to these issues as a policy matter.

Second, the Department of Education's failed efforts at mass loan cancellation were demonstrably not "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to evade review." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990) (cleaned up). Instead, there is every reason to believe that, in the ordinary course, there would be "ample time to obtain judicial review" of any similar future policy, *id.* at 482. The States' repeated litigation victories stopping prior attempts to cancel student loan debt nicely illustrate the point. *See, e.g., Biden v. Nebraska*, 600 U.S. 477 (2023) (affirming entry of preliminary injunction); *Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025) (affirming entry of preliminary injunction); *Missouri v. Dep't of Educ.*, 2024 WL 4069224 (S.D. Ga. Sept. 5, 2024) (entering temporary restraining order); *Missouri v. Dep't of Educ.*, 2024 WL 4426370, at *1 (E.D. Mo. Oct. 3, 2024) (entering preliminary injunction). There is no reason to think that any future loan-cancellation efforts, by contrast, would somehow escape judicial review—after all, the Biden Administration's efforts famously did not.

Were there any doubt on that question, it should now be erased by the Department of Education's recent settlement agreement with Missouri in separate litigation, in which the United States entered into a 10-year contractual obligation to "provide written notice to the Office of the Attorney General of Missouri" "[a]ny time that Defendants plan to or have reason to believe that they will cancel or forgive more than $10 billion in federal student loans within a one-month period." Settlement Agreement at 4, *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo. Dec. 9, 2025), https://perma.cc/6W9W-TLET. That new reporting requirement gives Missouri ample notice of the agency's planned actions, and makes it even less likely that this sort of agency action could somehow escape judicial scrutiny.

9

\* \* \*

For all these reasons, this case is moot. Of course, if Missouri is ever again facing the same concerns that led to the filing of this lawsuit, a mootness dismissal would be without prejudice. *See, e.g.*, *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464-65 (8th Cir. 2004). So even in that (speculative, hypothetical) situation, the Plaintiff States could simply file a new lawsuit at that time. That is the only proper way to litigate a case like this one—about a real and concrete dispute, between real adversaries, if and when such a dispute ever actually arises again.

## CONCLUSION

For these reasons, this case should be dismissed, in its entirety, on mootness grounds, under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

Dated: December 22, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

<u>/s/ Stephen M. Pezzi</u>
STEPHEN M. PEZZI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*