# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, | ) <br> ) |
| *Plaintiffs*, | ) <br> ) |
| v. | ) <br> ) Civil Action No. 24-cv-1316 <br> ) |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

## PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

**INTRODUCTION & SUMMARY OF THE ARGUMENT** ................................................... **2**
**ARGUMENT** ................................................................................................................................ **3**
**CONCLUSION** ........................................................................................................................... **9**

## INTRODUCTION & SUMMARY OF THE ARGUMENT

After this Court entered a preliminary injunction, Defendants withdrew their failed Third Mass Cancellation Rule.  And after the change in presidential administrations, the Department of Education *partially* disavowed the Biden Administration's student loan forgiveness policy.  But Defendants have not admitted that the Third Mass Cancellation Rule was unlawful, and Defendants have altered student-loan provider contracts to make such cancellations easier in the future.  Given the continued political support for mass-cancelling student loans without statutory authorization, Plaintiff States are confident that a different administration will try to reinstate the Third Mass Cancellation Rule in the future.

Although Defendants' voluntary withdrawal of the rule gave the States all of their requested relief, Defendants' actions are *the* textbook case of voluntary cessation. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953).  Without a declaration from this Court, Defendants under a new presidential administration would be free to return to their old ways and again attempt to cancel student loans without statutory authority.  Defendants have not and cannot meet their "formidable burden" of "*prov[ing]*" that "'no reasonable expectation' remains that [they] will 'return to [this scheme]'" in the future.  *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (emphasis added).

Accordingly, this Court should deny Defendants' motion to dismiss.

2

## ARGUMENT

"Permitting important agency rules to flicker in and out of existence is detrimental to the rule of law." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022). But that is exactly what Defendants are attempting to do. They voluntarily withdrew their Third Mass Cancellation Rule and now seek to avoid a court ruling on its (il)legality. All of this so that they can put the rule on ice during the Trump Administration only to be free to revive it with a new administration that favors student loan forgiveness.

Unfortunately for Defendants, the voluntary cessation exception prevents Defendants from mooting this case. Defendants may not "'automatically moot a case' by the simple expedient of suspending [their] challenged conduct after [they] [are] sued." *Fikre*, 601 U.S. at 241 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). This exception applies for three reasons. First, Defendants voluntarily withdrew their illegal rule—bringing it squarely within the doctrine. Second, Defendants' general policy disavowals do not meet their "formidable burden" of proving they will not attempt to return to this scheme. *Id.* And third, Defendants' other actions in preparation for this failed rule show that this rule is a ticking time bomb in the hands of a future administration.

*First*, Defendants suggest that their "formal[] withdraw[al]" of both notices of proposed rulemaking makes the voluntary cessation exception inapplicable. MTD at 7. But this is *the* textbook case of voluntary cessation. *See W. T. Grant Co.*, 345 U.S. at 632. "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if

3

it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (quoting *W. T. Grant Co.*, 345 U.S. at 632)) (alterations in original).  This is especially true when an agency withdraws a challenged rule.  *See Dow Chemical Co. v. EPA*, 605 F.2d 673, 678 (3d Cir. 1979) ("Courts are understandably reluctant to permit agencies to avoid judicial review, whenever they choose, simply by withdrawing the challenged rule.").  This is true even when that rule is withdrawn due a change in presidential administrations.  *See Indigenous Env't Network v. Trump*, 541 F. Supp.3d 1152, 1159 (D. Mont. 2021) (holding voluntary cessation exception applied executive order revoked by new presidential administration); *cf. Franciscan All.*, 47 F.4th at 375–75 (declining to vacate district court's order after agency passed new rule under new presidential administration while appeal was pending).

Defendants attempt to buttress their voluntary withdrawal of the rule as somehow escaping the voluntary cessation exception by suggesting that the "core premise of which this lawsuit was based was factually mistaken" because the proposed Third Mass Cancellation Rule was never finalized.  MTD at 7.  This is nothing more than an attempt to relitigate their prior losing arguments—which the Court need not revisit.  As Plaintiffs previously established, Defendants did have concrete plans to implement the Third Mass Cancellation Rule.  *See* ECF 57 at 2 (finding likelihood of success on the merits and granting preliminary injunction). Withdrawing that plan is not enough to escape the voluntary cessation exception.  *See*

4

*Fikre*, 601 U.S. at 243 ("A case does not automatically become moot when a defendant suspends its challenged conduct and then carries on litigating for some specified period.").

*Second*, in their very next paragraph, Defendants argue that with the change of presidential administrations, the Department of Education has now "firmly disavowed the general policy attitude toward student-loan forgiveness." MTD at 7. "Yes, a party's repudiation of its past conduct may sometimes help demonstrate that conduct is unlikely to recur." *Fikre*, 601 U.S. at 244. "Such a profession"—even coupled with cessation—"does not suffice." *W. T. Grant*, 345 U.S. at 633. "What matters is . . . what repudiation can prove about [their] future conduct." *Fikre*, 601 U.S. at 244. This is a "formidable burden." *Id.* at 241 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Defendants' burden is "no less" because they are the Government. *Id.* This is especially true because this regulatory change was "ad hoc, discretionary, and easily reversible" and "discretion to effect the change lies with one agency." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019).

But in any event, Defendants have *not* admitted that the Third Mass Cancellation Rule was unlawful. Although Defendants have withdrawn the Third Mass Cancellation Rule and disavowed the "general policy," they have *never* admitted that *this* rule exceeded their statutory authority under the Higher Education Act. Not when they withdrew the rule. *See* 89 Fed. Reg. 104,935 ("[T]he Department is not withdrawing this NPRM and terminating this rulemaking proceeding based upon

5

a changed view of the Secretary's authority under section 432(a) and 468(2) of HEA, or based upon any preliminary determination about the limitations of such authority."); 89 Fed. Reg. 104,940 (same).  And not now.  Defendants only "disavow[] the *general* policy attitude toward student-loan forgiveness"—they do not admit that *this* rule was illegal.  MTD at 7.

Thus, Defendants' general policy disavowal "falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Fikre*, 601 U.S. at 242.  Although disavowing the general policy of loan forgiveness, the Department of Education' "adherence to the interpretation of the [HEA]" that allowed these illegal rules shows that there is a reasonable expectation that this Third Mass Cancellation Rule could return with a new presidential administration inclined to return to these old ways.  *Dow Chemical Co.*, 605 F.2d at 679.  Allowing this rule to escape review here would mean that every time a presidential administration changes, the new administration could simply revoke a challenged policy making any challenges moot.  "[A]gency rules [would] flicker in and out of existence."  *See Franciscan All.*, 47 F.4th at 375.  This would be diametrically opposed to the "formidable burden" defendants' bear.  *Fikre*, 601 U.S. at 241.  The Supreme Court has repeatedly emphasized that defendants must make it "*absolutely* clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, 528 U.S. at 189 (emphasis added).

To be frank, Plaintiff States do not expect Defendants to try to re-implement the Third Mass Cancellation Rule while President Trump is in office.  But Plaintiff

6

States are *highly* confident that Defendants will try to re-implement the Third Mass Cancellation Rule in the future. The desire to forgive student loans without statutory authorization is not unique to the Biden Administration; prominent members of Congress have opposed a return to student loan normalcy, *e.g.*, Warren, Schumer, Sanders Urge ED Secretary McMahon to Reverse Interest Hike on Student Loan Borrowers Amid Rising Costs,[1] and in the past have called for the President to implement these illegal student loan policies, *e.g.*, *Schumer, Warren: The Next President Can and Should Cancel Up To $50,000 In Student Loan Debt Immediately; Democrats Outline Plan for Immediate Action in 2021* (Sept. 17, 2020).[2] Even after the Supreme Court has declared one plan illegal. *E.g.*, *Alexandria Ocasio-Cortez*, X (June 30, 2023, 10:26am), https://x.com/AOC/status/1674801593336864768 ("It is very important to note this SCOTUS ruling does NOT remove Biden's ability to pursue student loan forgiveness. The Biden Admin can use the HEA (Higher Ed Act) – our position from the start – to continue loan forgiveness before payments resume."). Thus, it is reasonable to expect these democratic leaders to call for the next President to return to the Biden Administration's illegal policies, and this scheme could "reasonably be expected to recur" with a new presidential administration. *Fikre*, 601 U.S. at 241.

*Third*, Defendants ignore other actions they took in furtherance of the Third

---

[1] https://www.warren.senate.gov/newsroom/press-releases/warren-schumer-sanders-urge-ed-secretary-mcmahon-to-reverse-interest-hike-on-student-loan-borrowers-amid-rising-costs.

[2] https://www.warren.senate.gov/newsroom/press-releases/schumer-warren-the-next-president-can-and-should-cancel-up-to-50000-in-student-loan-debt-immediately-democrats-outline-plan-for-immediate-action-in-2021.

7

Mass Cancellation Rule.  In particular, Defendants altered MOHELA's contract (and contracts with other loan servicing organizations) to compel them to cancel or forgive loans on Defendants' behalf.  ECF 55-1 at 37:1–4.  That is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Hawkes Co., Inc. v. U.S. Army Corps of Engineers*, 782 F.3d 994, 999 (8th Cir. 2015) (citation omitted), *aff'd*, 578 U.S. 590 (2016).  At least prior to the withdrawal of that unpublished rule, MOHELA remained "contractually obligate[d]" to cancel loans on behalf of the Federal Government whenever prompted.  ECF 55-1 at 37.  Defendants just as quickly could move to re-impose this rule and the associated contract modifications to cancel hundreds of billions in loans, irreparably harming the States, and that ticking time bomb will remain armed absent permanent injunctive relief.[3]  This reality, too, confirms that the government cannot satisfy its "formidable burden" under the voluntary cessation doctrine.  *Fikre*, 601 U.S. at 241.

\*   \*   \*

In short, Defendants have not satisfied their "burden to establish that [they] cannot reasonably be expected to resume [their] challenged conduct."  *Id.* at 243 (emphasis omitted).  What Defendants are really arguing is that a mere change of presidential administration and a vague articulation of new policy goals

---

[3] As Defendants observe, they have temporarily committed (at least in some circumstances) to give Missouri 30 days' notice before mass cancelling more student loans.  Settlement Agreement ¶ 13, *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo. Dec. 9, 2025), https://perma.cc/6W9W-TLET.  That agreement reduces the risk of surprise, but it does not help Defendants meet their burden of showing that "no reasonable expectation remains that [they] will return to [their] old ways." *Fikre*, 601 U.S. at 241.

8

automatically moots a challenge to a prior administration's actions.  *See* MTD 7–8. Plaintiff States are aware of no court that has embraced such a rule, which would be inconsistent with the Supreme Court's insistence that voluntary cessation generally *cannot* moot a case.  *See Fikre*, 601 U.S. at 241.

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that this Court deny Defendants Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF 111).

9

Date: January 5, 2026	Respectfully Submitted,

**CATHERINE L. HANAWAY**
Missouri Attorney General

LOUIS J. CAPOZZI, III
Missouri Solicitor General

*/s/ Louis J. Capozzi, III*
Louis J. Capozzi, III, #77756(MO)
   *Solicitor General*
Graham Miller #77656 (MO)
   *Deputy Solicitor General*
Missouri Attorney General
815 Olive Street, Suite #200
St. Louis, MO 65101
(314) 340-7652 Phone
Louis.Capozzi@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for State of Missouri*
*Lead Counsel for State Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2026, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Louis J. Capozzi, III*