**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

STATE OF MISSOURI, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,

    *Defendants*.

Case No. 4:24-cv-01316-MTS

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

STEPHEN M. PEZZI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................1

CONCLUSION ................................................................................................................................6

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)............................................................................................................3

*Alvarez v. Smith*,
  558 U.S. 87 (2009)............................................................................................................3

*FBI v. Fikre*,
  601 U.S. 234 (2024).......................................................................................................5, 6

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022).........................................................................................3-4

*Mille Lacs Band of Ojibwe v. Madore*,
  128 F.4th 929 (8th Cir. 2025).................................................................................. 1, 4, 6

*Prowse v. Payne*,
  984 F.3d 700 (8th Cir. 2021)............................................................................................4

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..........................................................................................................1

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)..........................................................................................................1

**Statutes**

28 U.S.C. § 1491................................................................................................................5

**Rules**

Fed. R. Civ. P. 12...............................................................................................................6

**Other Authorities**

U.S. Dep't of Educ., *Press Release: U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan* (Dec. 9, 2025),
  https://perma.cc/3J85-E8LN ..........................................................................................3

## **INTRODUCTION**

Plaintiffs now concede that they have already received "all of their requested relief" in this case. Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 2, ECF No. 112. They also acknowledge that they "do not expect Defendants to try to re-implement" what they call the "Third Mass Cancellation Rule while President Trump is in office." *Id.* at 6. Nevertheless, they still refuse to take yes for an answer, apparently seeking a pre-opinion that might govern possible future agency actions that might be taken by some possible future Secretary of Education under some possible future President. But under bedrock principles of Article III of the United States Constitution, "[a] speculative possibility is not a basis for retaining jurisdiction over a moot case." *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025). And "federal courts do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). After all, "federal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Because this controversy has already been resolved, the case is moot, and should be dismissed, without prejudice, in its entirety. If any similar dispute ever arises again in the far-off future, Plaintiffs can sue then.

## **ARGUMENT**

Defendants' motion to dismiss explained why this case is moot, and why two rare exceptions to mootness—for cases that are capable of repetition yet evading review, and the voluntary-cessation doctrine—do not apply here. In response, Plaintiffs do not dispute that (1) absent a mootness exception, this case would plainly be moot; nor that (2) the capable-of-repetition-yet-evading-review exception does not apply. Instead, Plaintiffs argue only that this case should move forward under the voluntary-cessation exception. But the Eighth Circuit's "standard for applying this exception is stringent." *Madore*, 128 F.4th at 941 (cleaned up). And so, for the reasons that follow, Plaintiffs' voluntary-cessation arguments lack merit.

**1.** Several of Plaintiffs' voluntary-cessation arguments are premised on the assertion that "Defendants have not admitted that the Third Mass Cancellation Rule was unlawful." Pls.' Opp'n at 2; *see also id.* at 5, 6. Those arguments fail on both the facts and the law.

1

First, on the facts, nobody should be surprised that "Defendants have not admitted that the Third Mass Cancellation Rule was unlawful," Pls.' Opp'n at 2—because there was never any "Third Mass Cancellation Rule" to begin with.  As detailed in Defendants' motion to dismiss and multiple sworn declarations, the factual premise on which this lawsuit was based was materially mistaken.  In short, the Department of Education never "discharged any loans pursuant to the authorities it proposed" in any NPRM, it never "instructed servicers to discharge any loans" under that proposal, and even "[a]bsent the temporary restraining order, the Department would not have issued forgiveness specified in the proposed rules without first finalizing the rules."  First Decl. of James R. Kvaal ¶¶ 33-34, ECF No. 35-1; *accord* Second Decl. of James Kvaal ("Second Kvaal Decl.") ¶¶ 6-7, 12-13, ECF No. 78-1.  Tellingly, Plaintiffs offer no response at all to Defendants' detailed explanation of what Plaintiffs got wrong—much less a declaration or any responsive evidence of their own.  So Defendants' evidence (and interpretation of that evidence) stands entirely unrebutted.[1]

In any event, Defendants have no hesitation in "admitting" that any "rule" of the sort described in Plaintiffs' complaint—*i.e.*, a secret agency action to engage in mass debt-cancellation based on authority floated only in a *proposed* rule, without completion of the notice-and-comment process and publication of a Final Rule—would have been unlawful.  Indeed, even during the Biden Administration, Defendants never argued—not even in the alternative—that the Department of Education had the sort of authority that Plaintiffs mistakenly feared the agency was exercising here.

---

[1] Plaintiffs' only argument on this point (at 4) is to reference this Court's brief preliminary-injunction order, Mem. & Order, ECF No. 57—which was entered under extreme time pressure, hours after the case was assigned to this Court, and before Defendants had the opportunity to make a single filing in this Court.  But that order does not actually make any factual findings on this issue, and Plaintiffs do not argue otherwise.  Regardless, contrary to Plaintiffs' suggestion, Defendants are not asking this Court to "revisit" the issuance of a preliminary injunction, Pls.' Opp'n at 4, which Defendants did not appeal.  Instead, Defendants are arguing that subsequent events have mooted the case, which is an issue that this Court has never addressed.  Ultimately, although the Court cannot be blamed for taking Plaintiffs' previous (erroneous) factual assertions at face value—particularly given the time pressure caused by the imminently expiring temporary restraining order, and the sudden case transfer and reassignment—the only evidence before the Court *now* are Defendants' sworn and unrebutted declarations.  So the Court need not "revisit," Pls.' Opp'n at 4, any prior decision to grant Defendants' motion.

Instead, Defendants' filings in this case were entirely limited to threshold issues of jurisdiction, justiciability, and venue. *See* ECF Nos. 35, 37, 64, 74. So even if Defendants were required to repudiate their past litigation positions to moot a case, *but see infra* (citing two Supreme Court cases to the contrary), there is nothing more for Defendants to repudiate here.

More generally, as for renouncing the Biden Administration's policy approach to student-debt forgiveness, it is harder to be clearer than the following press release from the highest levels of the Department of Education:

> "For four years, the Biden Administration sought to unlawfully shift student loan debt onto American taxpayers, many of whom either never took out a loan to finance their postsecondary education or never even went to college themselves, simply for a political win to prop up a failing Administration," said Under Secretary of Education Nicholas Kent. "The Trump Administration is righting this wrong and bringing an end to this deceptive scheme. The law is clear: if you take out a loan, you must pay it back. Thanks to the State of Missouri and other states fighting against this egregious federal overreach, American taxpayers can now rest assured they will no longer be forced to serve as collateral for illegal and irresponsible student loan policies."

U.S. Dep't of Educ., *Press Release: U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan* (Dec. 9, 2025), https://perma.cc/3J85-E8LN. In response, curiously, Plaintiffs say that the Trump Administration has "*partially* disavowed the Biden Administration's student loan forgiveness policy." Pls.' Opp'n at 2. But, what "part[]" has been left standing? *Id.* They do not say—and Defendants do not know what Plaintiffs are referring to.

Second, in any event, on the law, a defendant is not obligated to concede the illegality of past conduct to moot a case. To the contrary: as the Supreme Court has explained more than once, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). That is the case here.

**2.** Plaintiffs rely heavily on a Fifth Circuit case for the general sentiment that "[p]ermitting important agency rules to flicker in and out of existence is detrimental to the rule of law." *Franciscan*

3

*All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022) (quoted in Pls.' Opp'n at 2, 6); *but see Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021) (the Eighth Circuit acknowledging correctly that when "government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit"). But Plaintiffs' concern about "flickering" rules is plainly inapplicable, because the "rule" challenged here *never* took effect. And as explained in multiple unrebutted declarations, that is not just because Plaintiffs obtained injunctive relief. *See, e.g.*, Second Kvaal Decl. ¶ 6 ("The Department has not discharged any loans pursuant to the proposals in its April 2024 SDR NPRM, either before or after entry of the temporary restraining order or subsequent preliminary injunction."); *id.* ¶ 7 ("Even absent the temporary restraining order and preliminary injunction, the Department never planned to issue forgiveness specified in the SDR NPRM before finalizing the rule."). In other words, the agency *never* engaged in the actions challenged here.

Of course, if the Department of Education had published a Final Rule, Plaintiffs could have challenged *that* rule. But instead, the Department of Education never completed this rulemaking, and withdrew both potentially relevant notices of proposed rulemaking before finalizing any rule. So it does not matter—and is both unknown and unknowable—what any Final Rule would have even looked like. That reality makes it difficult to imagine, as a practical matter, how this litigation could now continue. Without an actual rule to consider, on Plaintiffs' view, what is the Court even supposed to decide? What relief could it order? Plaintiffs never say. *See Madore*, 128 F.4th at 940 (dismissing case as moot where continued litigation "would answer what is now a hypothetical legal question").

**3.** Plaintiffs argue that, during the rulemaking process, the Department of Education "altered MOHELA's contract (and contracts with other loan servicing organizations) to compel them to cancel or forgive loans on Defendants' behalf." Pls.' Opp'n at 8. As a result, Plaintiffs argue, "prior to the withdrawal of [the] unpublished rule, MOHELA remained contractually obligated to cancel loans on behalf of the Federal Government whenever prompted." *Id.* (cleaned up).

Even if that is true, it is not clear why that helps Plaintiffs defeat mootness. After all, Defendants' core argument is based on the Department of Education's "withdrawal" of all relevant notices of proposed rulemaking, so Plaintiffs' own caveat swallows their argument. *Id.* And more

4

generally, Plaintiffs never explain what the terms of MOHELA's contract with the government have to do with mootness.  It is neither unusual nor unlawful for government contractors to be required by contract to do what the government asks.  Moreover, Plaintiffs never challenged any contractual modification in this case, nor sought any relief relating to MOHELA's contracts—which is why Plaintiffs concede that they have already received "all of their requested relief." Pls.' Opp'n at 2.  Of course, if MOHELA (or any other contractor) believes that the government has violated the law in the contracting process, it may bring any contract-based claims in the Court of Federal Claims, under the Tucker Act.  28 U.S.C. § 1491.  But the status of MOHELA's contracts has little to do with this suit, now that all potentially relevant notices of proposed rulemaking have been withdrawn.

Again referencing MOHELA's contracts, Plaintiffs argue that "Defendants just as quickly could move to re-impose this rule and the associated contract modifications to cancel hundreds of billions in loans," calling that a "ticking time bomb." Pls.' Opp'n at 8.  Again, that is both incorrect and (even if it were correct) is not enough to prevent a mootness dismissal.  It is incorrect because the Department of Education plainly cannot "cancel hundreds of billions in loans" under legal authority announced only in a *proposed* rule—much less a proposed rule that has been withdrawn.  And the processes of negotiated rulemaking under the Higher Education Act and notice-and-comment rulemaking under the Administrative Procedure Act are hardly "quick[]" or "eas[y]," Pls.' Opp'n at 5, 8—and both processes would need to be completed before any comparable rule could be proposed and finalized here.  So when Plaintiffs say that the Trump Administration's rejection of the Biden Administration's approach is "easily reversible," *id.* at 5, they are mistaken.

Regardless, the speed of any possible new future agency action is also irrelevant to mootness.  The key question is not whether it is theoretically *possible* that the agency could conceivably, one day in the future, try and accomplish something similar, nor how long it would take to do so.  The legal standard for mootness under the voluntary-cessation exception is whether the Department of Education can "reasonably be expected to do again in the future what it is alleged to have done in the past." *FBI v. Fikre*, 601 U.S. 234, 242 (2024).  And for all the reasons above, it cannot.  The most that

5

Plaintiffs can offer is the sort of "speculative possibility" that the Eighth Circuit has emphasized "is not a basis for retaining jurisdiction over a moot case." *Madore*, 128 F.4th at 941.

* * *

"Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *Fikre*, 601 U.S. at 240. Such is the case here. If Missouri's speculative fears do one day come to pass—for the first time—there is nothing stopping them from bringing a lawsuit at that time, challenging that unprecedented agency action. But here, there is nothing left for this Court to decide.

## CONCLUSION

For these reasons, this case should be dismissed, in its entirety, on mootness grounds, under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

Dated: January 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*