**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

|  |  |
|---|---|
| STATE OF MISSOURI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> *Defendants*. | Case No. 4:24-cv-01316-MTS |

**DEFENDANTS' SUPPLEMENTAL POST-HEARING BRIEF**

As discussed at the April 28, 2026 motions hearing in the above-captioned matter, Defendants respectfully submit this supplemental brief to address the Court's questions about "whether or not a plaintiff can challenge the publication of a proposed rule before publication of the final rule." Hr'g Tr. at 62:13-15. Whether considered a matter of Article III standing, ripeness, or the final-agency-action requirement of the Administrative Procedure Act (APA), the answer to that question is **no**. In short, as then-judge Kavanaugh once put it, federal courts "do not have authority to review proposed agency rules." *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015). For that reason, and for the reasons advanced in prior briefing and at oral argument, this Court should grant the government's pending motion to dismiss for lack of subject-matter jurisdiction (ECF No. 111) under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). That dismissal would be without prejudice to Plaintiffs' ability to file a new lawsuit challenging any hypothetical future actions by the Department of Education that are unlawful and that cause Plaintiffs a concrete Article III injury.

**I.      Plaintiffs failed to establish subject-matter jurisdiction at the time of the complaint.**

This case began with a misunderstanding. As explained at length in prior briefs and at the recent hearing in this matter, this suit was originally premised on the extraordinary theory that, even before publication of any final rule, the Department of Education secretly intended to engage in mass student debt cancellation based on legal authority in a *proposed* rule. *See, e.g.*, Compl. ¶ 5, ECF No. 1.

(alleging that "the States have just obtained documents proving that the Secretary is implementing this plan without publication and has been planning to do so since May"). As the government eventually explained in two sworn declarations, that premise was mistaken. In reality, the Department of Education never "discharged any loans pursuant to the authorities it proposed" in any proposed rule, it never "instructed servicers to discharge any loans" under that proposal, and even "[a]bsent the temporary restraining order, the Department would not have issued forgiveness specified in the proposed rules without first finalizing the rules." First Decl. of James R. Kvaal ¶¶ 33-34, ECF No. 35-1; *accord* Second Kvaal Decl. ¶¶ 6-7, 12-13, ECF No. 78-1.

Those declarations are entitled to a presumption of regularity. *See, e.g.*, *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 577 (2025) ("[A]gencies are entitled to a presumption of regularity."). And, regardless, even applying the normal evidentiary rules, despite many opportunities, Plaintiffs have never offered any factual rebuttal whatsoever to any of the government's declarations on this point. To the contrary, at the recent hearing in this matter, Plaintiffs' counsel explicitly conceded, at long last, that the original premise upon which this lawsuit was founded was mistaken:

> MR. CAPOZZI: " . . . [T]he evidence in these affidavits really is just – it's attacking a straw man. Missouri does not dispute – I mean, Defendants say, 'Well, we did not plan to cancel student loans before announcing the final rule.' Again, we don't disagree. We don't dispute that."

Hr'g Tr. at 44:4-9. That long-awaited concession was appropriate and commendable, given the facts that Plaintiffs know now. But it is also straightforwardly fatal to what remains of this lawsuit, as a matter of standing, ripeness, and final agency action—all of which go to the subject-matter jurisdiction of this Court under Eighth Circuit precedent.

**Article III Standing.** "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

2

As relevant here, "Article III standing requires more than the possibility of potentially adverse regulation." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013). That is true even where the contours of that possible future regulation are, in some way, foreshadowed by other legal documents (*e.g.*, a proposed rule), even "using a specific timeline." *Id.* at 1324; *see also Ctr. For Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 222 (D.D.C. 2020) (no standing to challenge an Executive Order that directed two federal agencies to "expeditiously propose regulations" preventing online censorship by social-media companies (citation and emphasis omitted)).

For that reason, Plaintiffs do not have Article III standing to challenge a proposed rule. Instead, they must wait until some rule is actually finalized, and thus causes an injury that is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). In the interim, Plaintiffs' rights are "not impaired by the initiation of a rulemaking"—after all, they "will not be precluded from participating in the rulemaking and, if [the government] decides to issue a final rule," they are "not precluded from challenging that rule." *Perciasepe*, 714 F.3d at 1325; *see e.g.*, *Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) ("Allegations of injury based on predictions regarding future legal proceedings are, however, 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990)); *see also, e.g.*, *Missouri v. Biden*, 52 F.4th 362, 370 (8th Cir. 2022) (no standing to challenge an Executive Order that required agencies to account for the costs of carbon emissions in issuing future regulations); *Minn. Auto Dealers Ass'n v. Minnesota*, 520 F. Supp. 3d 1126 (D. Minn. 2021) (no standing to challenge a proposed rule).

Of course, here, there is no longer even a *proposed* rule to challenge, as the Department of Education long ago withdrew both potential relevant notices of proposed rulemaking. Dep't of Educ., *Student Debt Relief: Withdrawal of Notice of Proposed Rulemaking and Termination of Rulemaking Proceeding*, 89 Fed. Reg. 104,939 (Dec. 26, 2024); Dep't of Educ., *Student Debt Relief Based on Hardship: Withdrawal of Notice of Proposed Rulemaking and Termination of Rulemaking Proceeding*, 89 Fed. Reg. 104,934 (Dec. 26, 2024). That is why this case is also moot—whether or not the Court had subject-matter jurisdiction at the time of the complaint, as explained in detail in prior briefs and at oral argument.

3

But even setting aside the mootness question, Article III standing is determined at the time of the filing of the complaint. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). And because, at that time, Plaintiffs challenged only a proposed rule, not a final rule, the Court lacked subject matter jurisdiction over this suit—then, and now.

**Ripeness.**  Similar concerns are equally fatal under the rubric of ripeness. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).

Under these principles, a litigant must wait until a rule is finalized before it can challenge that rule in federal court—that is when "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807-08.  But "[u]ntil then, Plaintiffs are at most 'concerned bystanders' to internal Executive Branch processes." *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 81 (D.D.C. 2025); *see also, e.g.*, *Minnesota Auto Dealers*, 520 F. Supp. 3d at 1126 (challenge to a proposed rule not ripe).  Accordingly, even if Plaintiffs had adequately established standing, they failed (then and now) to show ripeness.

**Final Agency Action.**  The APA provides for judicial review only of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  At least within the Eighth Circuit,

the APA's final-agency-action requirement is jurisdictional.[1]   Under that requirement, "[i]t is well established that the party seeking APA review must satisfy two conditions for the challenged agency action to be considered 'final.'"  *Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*, 162 F.4th 908, 917 (8th Cir. 2025).  "First, the action must mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory in nature."  *Id.*.  "Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154 177-78 (1997)).  In the Eighth Circuit, "[t]o satisfy this second condition, the agency action 'must inflict some legal injury upon the party seeking judicial review,' either compelling affirmative action or prohibiting otherwise lawful action."  *Id.* (quoting *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018)).

Applying these principles, "[p]roposed rules meet neither of the two requirements for final agency action."  *In re Murray Energy*, 788 F.3d at 334.  A proposed rule is (essentially, by definition) not "the consummation of the agency's decisionmaking process," instead it is "tentative or interlocutory in nature."  *Union Pacific*, 162 F.4th at 917.  And no "legal consequences will flow" from a proposed rule, *id.* at 336—instead, legal consequences (if any) would stem from a final rule.  After all, it is only a final rule that would "either compel[] affirmative action or prohibit[] otherwise lawful action."  *Id.*  That is why courts around the country have uniformly held that a proposed rule is *not* a final agency action subject to judicial review under the APA.  *See, e.g.*, *In re Murray Energy*, 788 F.3d at 334; *In re Bluewater Network*, 234 F.3d 1305, 1313 (D.C. Cir. 2000) ("[A]n agency's pronouncement of its intent

---

[1]  *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 813 (8th Cir. 2006) ("[J]urisdiction is limited to judicial review under the APA, which provides for review of 'final agency action for which there is no other adequate remedy in a court.'" (quoting 5 U.S.C. § 704)); *Auto-Mark, Inc. v. Consumer Prod. Safety Comm'n*, 2025 WL 2675798, at *6 (D. Minn. Sept. 18, 2025) ("The final-agency-action requirement is a jurisdictional element of an APA claim.").  If it matters, the same is true of the Eleventh Circuit, where this suit was originally filed.  *See, e.g.*, *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1255 (11th Cir. 2020) ("In our circuit, dismissal for the reason that the challenged agency action was not a final order is a dismissal for lack of subject-matter jurisdiction.").  Although other courts (and the Department of Justice) have sometimes taken a different approach, *see, e.g.*, *Trudeau v. FTC*, 456 F.3d 178, 184-85 (D.C. Cir. 2006), this Court is bound by Eighth Circuit precedent on this issue.

to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court."); *FDIC v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 24 (D.D.C. 2025) ("[P]roposed rules are not 'final agency actions' that this court has authority to review."). After all, "a proposed rule is just a proposal." *In re Murray Energy*, 788 F.3d at 334.

Accordingly, even if Plaintiffs could have overcome their standing and ripeness problems, the APA's final-agency-action requirement offers a third, independent basis for dismissal of the complaint for lack of subject-matter jurisdiction.

## II.    Plaintiffs cannot amend their complaint via statements at oral argument.

One additional point warrants mention. After the concession quoted above, Plaintiffs' counsel tried to rehabilitate the complaint by trying out a new theory: "The allegation we have, which I don't think the affidavits speak to at all, is Defendants planned to announce the final rule, and simultaneously, same day, order the student loan providers to cancel the loans." Hr'g Tr. at 44:10-13.

But the Court will scour the complaint in vain for any such theory, or any factual allegation to that effect—which is *why* the government's declarations don't "speak to" that theory "at all." *Id.* at 44:11. To the extent Plaintiffs believe that they have adequately preserved some *alternative* theory that could possibly resurrect this lawsuit now—even after conceding that they "do not expect" the agency to take any similar actions "while President Trump is in office," Pls.' Opp'n to Mot. to Dismiss at 6, ECF No. 112—that could (at most) be the basis for a motion for leave to file an amended complaint. *See, e.g.*, *Holmgren v. Woodside Credit, LLC*, 672 F. Supp. 3d 680, 688 (D. Minn. 2023) (plaintiff cannot amend a pleading "in an opposition brief or at oral argument") (citing *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)). But whether or not the standing or mootness questions raised by some *other* hypothetical complaint might be analyzed differently, *this* complaint is now beyond the subject-matter jurisdiction of this Court for multiple independent reasons.

## CONCLUSION

For these reasons, and for the reasons advanced in prior briefing and at oral argument, this Court should grant the government's pending motion to dismiss for lack of subject-matter jurisdiction (ECF No. 111) under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

6

Dated:  June 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.:  (202) 305-8576
Email:  stephen.pezzi@usdoj.gov

*Counsel for Defendants*