**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

|  |  |  |
|---|---|---|
| STATE OF MISSOURI, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:24-cv-1316-MTS |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF EDUCATION, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' SUPPLEMENTAL POST-HEARING BRIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... 2

INTRODUCTION & SUMMARY OF THE ARGUMENT ......................................... 5

ARGUMENT ............................................................................................................... 6

I.   This Court has already determined Plaintiff States have standing, and Defendants' untimely motion offers no reason for this Court to depart from its prior reasoning. ........... 6

II.  But even if this Court were to allow Defendants to relitigate subject matter jurisdiction at this stage, Plaintiff States meet their burden. .................................... 8

    A.   The first student loan case clearly shows that Article III is satisfied. ............................. 9

    B.   Even if the first student loan case does not control, the Third Mass Cancellation Rule is a final agency action. ........................................................ 12

    C.   Defendants arguments to the contrary rest on the presumption that publication equals finality—which is not supported by caselaw. ..................................... 15

III. Plaintiff States stand by their original complaint. ............................................. 16

CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                                      Page(s)

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967) ................................................................................................ 16

*Ahmad v. City of St. Louis*,
   995 F.3d 635 (8th Cir. 2021) .................................................................................... 5

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
   172 F.4th 361 (4th Cir. 2026) .................................................................................. 6

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ................................................................................................. 9

*Bennett v. Spear*,
   520 U.S. 154 (1997) ........................................................................................ passim

*Biden v. Nebraska*,
   600 U.S. 477 (2023) ........................................................................................ passim

*Brake Plus NWA, Inc. v. U.S. Dep't of Transp.*,
   176 F.4th 1037 (8th Cir. 2026) ......................................................................... 12, 13

*Campaign for Fam. Farms v. Glickman*,
   200 F.3d 1180 (8th Cir. 2000) .................................................................................. 7

*Credit Suisse First Boston Corp. v. Grunwald*,
   400 F.3d 1119 (9th Cir. 2005) .............................................................................. 7, 8

*Curia v. Nelson*,
   587 F.3d 824 (7th Cir. 2009) ................................................................................. 14

*Favia v. Ind. Univ. of Pa.*,
   7 F.3d 332 (3d Cir. 1993) ........................................................................................ 7

*FBI v. Fikre*,
   601 U.S. 234 (2024) ............................................................................................... 17

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ............................................................................................... 16

*FDIC v. Bank of Am., N.A.*,
   783 F. Supp. 3d 1 (D.D.C. 2025) .......................................................................... 15

*Friends of the Earth v. Laidlaw Env't Servs.*,
   528 U.S. 167 (2000) ............................................................................................... 17

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
  541 U.S. 567 (2004) ............................................................................................................ 9

*Hekel v. Hunter Warfield, Inc.*,
  118 F.4th 938 (8th Cir. 2024) ............................................................................................ 8

*In re Bluewater Network*,
  234 F.3d 1305 (D.C. Cir. 2000) ....................................................................................... 15

*In re Murray Energy*,
  788 F.3d 330 (D.C. Cir. 2015) ......................................................................................... 15

*Lujan v. Defs. of Wilflife*,
  504 U.S. 555 (1992) ............................................................................................... 9, 16, 17

*Matal v. Tam*,
  582 U.S. 218 (2017) .......................................................................................................... 10

*Murthy v. Missouri*,
  603 U.S. 43 (2024) .............................................................................................................. 6

*Nat'l Park Hosp. Ass'n v. Dep'f of Inerior*,
  538 U.S. 807– (2003) ........................................................................................................ 16

*Newman-Green Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989) ............................................................................................................ 9

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
  499 U.S. 117 (1991) .......................................................................................................... 14

*Royal Canin U.S.A. v. Wullschleger*,
  604 U.S. 22 (2025) .............................................................................................................. 9

*Saliba v. SEC*,
  47 F.4th 961 (9th Cir. 2022) ............................................................................................. 12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .......................................................................................................... 16

*Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*,
  162 F.4th 908 (8th Cir. 2025) ....................................................................................... 8, 12

*United States v. Hively*,
  437 F.3d 752 (8th Cir. 2006) .............................................................................................. 7

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ............................................................................................................ 7

3

**Statutes**

5 U.S.C. § 704 ............................................................................................................... 16

**Rules**

Fed. R. Civ. P. 54(b) ........................................................................................................ 7

**Regulations**

Federal Student Aid Programs (Federal Perkins Loan Program, Federal Family Education Loan
  Program, and William D. Ford Federal Direct Loan Program),
  87 Fed. Reg. 61,512 (Oct. 12, 2022) ........................................................................... 9

**INTRODUCTION & SUMMARY OF THE ARGUMENT**

After Defendants attempted to argue standing (despite moving to dismiss for mootness, Doc. 111), this Court ordered supplemental briefing on whether "[Plaintiff] State[s] ha[d] standing to bring" this action when it was filed in September 2024. Hr'g Tr. 63:5–9 (Apr. 28, 2026).[1] At that time, Defendants unsuccessfully contested Plaintiff States' standing—and this Court granted a preliminary injunction anyway. Doc. 57. Defendants clearly disagree with the Court's prior ruling but point to no "subsequent changes in the facts or the law" to warrant this Court reconsidering its previous decision. *Ahmad v. City of St. Louis*, 995 F.3d 635, 640 (8th Cir. 2021).

Even if this Court reconsiders its previous standing decision, this Court clearly has jurisdiction to hear Plaintiff States' challenge to the Third Mass Cancellation Rule. *First*, at the time of the complaint in the first student loan litigation, the Department of Education had not published the challenged rule. *See Biden v. Nebraska*, 600 U.S. 477, 487–88 (2023). Yet the Supreme Court determined "Article III satisfied" when the agency had only announced the rule. *Id.* at 494. Simultaneous with that announcement, the Department of Education had issued loan servicers a Change Request to implement the plan. Business Operations Change Request Form (Aug. 24, 2022), attached hereto as Exhibit A. Likewise here, Defendants issued a Change Request to implement the Third Mass Cancellation Rule. *See* Compl. Ex. D. Like in *Biden v. Nebraska*, this Change Request shows that Defendants had finalized this Third Mass Cancellation Rule— before formally publishing it. Plaintiff States therefore had standing to challenge it.

---

[1] This Court permitted the parties to "characterize [the question] however you want." Hr'g Tr. 63:10 (Apr. 28, 2026). Defendants, based on how they phrased the issue to the Court, have characterized the issue as "whether or not a plaintiff can challenge the publication of a proposed rule before publication of the final rule." Doc. 121 at 1. But as phrased by Defendants, this question misses the issue in the case. Plaintiff States challenged the Third Mass Cancellation Rule as being "finaliz[ed]" "*without* publication." Compl. ¶ 4–5.

*Second*, even if this Court disregards the controlling nature of *Biden v. Nebraska*, the Third Mass Cancellation Rule "mark[ed] the 'consummation' of the agency's decisionmaking process" and determined "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The Change Request states the Defendants were "implementing" the Rule. Compl. Ex. D. And other documents confirm that Defendants had in fact "consumat[ed]" the Rule. And same as the first student loan forgiveness scheme, the Third Mass Cancellation Rule's financial impact was "directly traceable to the Secretary's plan" such that these legal consequences were "direct and appreciable." *Biden*, 600 U.S. at 490; *Bennett*, 520 U.S. at 178.

*Lastly*, none of Defendants' arguments to the contrary are availing. Defendants conflate "finality" with "publication" to argue that this Court lacks jurisdiction to hear this case. However, *Biden v. Nebraska* directly refutes this synthesis of terms—as that rule was not published at the operative moment of the complaint and yet there was jurisdiction. *See* 600 U.S. at 494. And even then, Defendants refuse to engage with *Bennett*'s two requirements for finality.

Accordingly, this Court should deny Defendants' motion to dismiss.

## ARGUMENT

**I.    This Court has already determined Plaintiff States have standing, and Defendants' untimely motion offers no reason for this Court to depart from its prior reasoning.**

Back in September 2024, the parties briefed whether Plaintiff States had standing to challenge the Third Mass Cancellation Rule. Doc. 5 at 18–29; Doc. 35 at 10–25; Doc. 45 at 6–23. This Court necessarily considered those arguments—and deemed the States to have standing— when it granted a preliminary injunction in this case. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 367 (4th Cir. 2026) (en banc) ("A district court may not grant a preliminary injunction—or any other form of relief—unless the plaintiff has sufficiently demonstrated Article III standing." (citing *Murthy v. Missouri*, 603 U.S. 43, 59–60 (2024))).

Admittedly, this Court's finding of fact and conclusion of law is merely "tentative and provisional." *Campaign for Fam. Farms v. Glickman*, 200 F.3d 1180, 1186 (8th Cir. 2000) (citation omitted).  But the tentative nature of this decision is because "different findings might be warranted after a trial on the merits." *Id.* (cleaned up) (citation omitted); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").  No such trial has occurred, and yet Defendants ask this Court to reverse its prior ruling.  *See* Doc. 121.

Certainly, this Court is free to reconsider interlocutory orders.  *See United States v. Hively*, 437 F.3d 752, 766 (8th Cir. 2006); *see also* Fed. R. Civ. P. 54(b).  But without any subsequent changes in facts or law, this Court's continuing ability to modify an interlocutory order abuts the time limitations for a motion for reconsideration under Rule 59(e).  *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005).  In these circumstances, a court looks to the "'substance'" of the motion to determine whether it should be treated "as a motion for reconsideration under Rule 59 or a motion for dissolution or modification under Rule 54." *Id.* (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993)).  "[A] motion that merely seeks to relitigate the issues underlying the original preliminary injunction order is subject to Rule 59(e)'s [twenty-eight]-day limit, while a motion that in substance is based on new circumstances that have arisen after the district court granted the injunction may be filed at any time before entry of a final judgment." *Id.*

Defendants point to zero changed factual circumstances or legal developments warranting this Court's reconsideration of standing. *See generally* Doc. 121.  Instead Defendants rehash their previous standing arguments that this Court already found unpersuasive. *Compare* Doc. 121, *with* Doc. 35 at 10–13.  Therefore, this brief, filed almost two years after the district court previously

7

denied Defendants' motion to dismiss and granted the preliminary injunction, is untimely.  *See Credit Suisse*, 400 F.3d at 1125.

True, even if not time barred, this Court has a continuing obligation to ensure that standing exists "throughout the litigation."  *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 941–42 (8th Cir. 2024).  However, Defendants trot out the exact same arguments, ask this Court to change its decision, and dismiss this suit.  *See* Doc. 121; *see also* Doc. 35; Doc. 37; Doc. 65; Doc. 111.  This Court has correctly rejected these previous motions, and Defendants offer no new (or persuasive) reason why this Court should reverse itself now.

## II.    But even if this Court were to allow Defendants to relitigate subject matter jurisdiction at this stage, Plaintiff States meet their burden.

Defendants argue that this Court lacks subject matter jurisdiction to assess Plaintiff States' challenge to the Third Mass Cancellation Rule because it was never published and thus could not be final.  *See* Doc. 121 at 2–6.  But whether called standing or ripeness, Defendants' argument presumes that finality requires publication.  *See id*.  Despite their handwringing, Defendants' citations only speak of "final agency action" and "proposed rules"—not of "publication."  *See id.*  Defendants simply have no caselaw to support their syllogism.  And for good reason:  "It is well established that the party seeking APA review must satisfy two conditions for the challenged agency action to be considered 'final.'"  *Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*, 162 F.4th 908, 917 (8th Cir. 2025).  "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).  Although both of these conditions are met here, *see infra*, this case is even simpler.

### A. The first student loan case clearly shows that Article III is satisfied.

In the first student loans case, Plaintiff States filed their complaint challenging the HEROES Plan *before* the final rule was published. *Compare* Compl., *Nebraska v. Biden*, No. 4:22-cv-1040 (E.D. Mo. Sept. 29, 2022), *with* Federal Student Aid Programs (Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program), 87 Fed. Reg. 61,512 (Oct. 12, 2022). Plaintiff States premised the complaint on the Department of Education "announc[ing]" this HEROES Plan on August 24, 2022, Compl. ¶¶ 5, 76–78, 138–40, *Nebraska v. Biden*, No. 4:22-cv-1040 (E.D. Mo. Sept. 29, 2022), while the HEROES Rule was published "[t]wo months later," *Biden v. Nebraska*, 600 U.S. 477, 488 (2023). Yet in a case where standing was heavily litigated, no Justice questioned whether the Court had subject matter jurisdiction because the HEROES Rule was unpublished at the time of the complaint. *See generally id.*[2] The Court held "Article III satisfied." *Id.* at 494.

That the HEROES Rule was published after the Complaint was filed does not change the Court's jurisdictional holding. "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defs. of Wilflife*, 504 U.S. 555, 569 n.4 (1992) (quoting *Newman-Green Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).[3] And "courts, including th[e Supreme] Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). So if Plaintiff States lacked standing to challenge the then-

---

[2] For that matter, the Defendants only raised the issue in a terse paragraph in their reply brief, once again without any legal authority. *See* Reply Br. at 10, *Biden v. Nebraska*, Nos. 22-506, 22-535 (U.S. Feb. 15, 2023).

[3] Diversity jurisdictional defects may be able to be cured post filing in narrow circumstances, *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571–73 (2004), but federal question jurisdiction depends solely on the facts at the time of the complaint, *see Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 37–38 (2025) (holding that "amending a complaint to add a federal claim" after removal "establishes jurisdiction going forward").

unpublished rule when they filed their complaint, it would have been impossible for the dispute to have ripened into a live controversy.[4]  So *Biden v. Nebraska* refutes Defendants' argument that there is no finality without publication.

For their part, Defendants have previously acknowledged that the HEROES Plan was challenged before the publication of the rule:  "In *Nebraska . . .* , the Administration had announced a final intention to forgive certain student loans when Plaintiffs moved for injunctive relief."  Doc. 35 at 14.  In Defendants' mind, this "announce[ment]" makes the difference, *see id.* at 14–15, but this distinction is wrong.  First, finality is marked by "the 'consummation' of the agency's decisionmaking process."—not the "announcement" of the agency's decisionmaking process.  *Bennett*, 520 U.S. at 178.  "Announce" means "to make publicly known; to proclaim formally," Black's Law Dictionary (12th ed. 2024), and it is common sense that the decision must be made before announcing the decision, *see, e.g.*, *id.* (giving example: "the judge announced her decision in court").  Otherwise, the announcement would be nothing more than "babbling . . . incoherently."  *Cf. Matal v. Tam*, 582 U.S. 218, 236 (2017).  So an announcement evidences the consummation of the decisionmaking process, but it is not necessary for consummation.

Second, on the *same* day that the Department of Education formally announced the HEROES Plan, *see* Compl. ¶¶ 5, 76, *Nebraska v. Biden*, No. 4:22-cv-1040 (E.D. Mo. Sept. 29, 2022); *see also Background Press Call by Senior Administration Officials on Student Loan Relief*, The White House (Aug. 24, 2022),[5] the Department of Education sent contractors a document titled "Business Operations Change Request Form."  *See* Ex. A.  This document instructs loan

---

[4] Moreover, the Court makes no mention of ripeness.  *See Biden*, 600 U.S. at 490–94.
[5]   https://www.presidency.ucsb.edu/documents/background-press-call-senior-administration-officials-student-loan-relief.

servicers "to implement a process" which "will allow for [HEROES Plan] discharges." *Id.* at 1. Thus, like the announcement, this Change Request also evidences the consummation of the Department of Education's decisionmaking process. Importantly, this form makes the present case straight forward.

This Change Request (Ex. A) is to the HEROES Plan as the Change Request in this case (Compl. Ex. D) is to the Third Mass Cancellation Rule. Both forms were submitted by the Department of Education to loan servicers. Ex. A; Compl. Ex. D. Both contain target dates for implementation. Ex. A; Compl. Ex. D. And both contain virtually identical reasons for the change: to "implement" their respective loan forgiveness program. *Compare* Ex. A at 1 ("[The Department of Education] needs to implement a process to request large volumes of Pandemic-connected borrower discharges that allow [the Department of Education] to provide the requests to the needed vendors."), *with* Compl. Ex. D at 1 ("[The Department of Education] is in the process of implementing additional types of loan forgiveness for borrowers. Multiple additional types of forgiveness are being implemented with the requirements listed below . . . ."). The only difference in the present case is that the Department of Education did not make an announcement, likely having learned that a public announcement previously gave the States a head start in challenging their loan forgiveness schemes. *See, e.g.*, *Biden*, 600 U.S. at 488. But despite having avoided a public announcement, the same groundwork to "implement[]" this finalized rule was underway, as evidenced by the Change Request. *See* Compl. Ex. D. Thus, just as the HEROES Plan Change Request was issued after the rule was finalized such that "Article III [was] satisfied," *Biden*, 600 U.S. at 494, so too here. The Third Mass Cancellation Rule Change Request establishes that the rule was final and that this Court has subject matter jurisdiction.

11

**B. Even if the first student loan case does not control, the Third Mass Cancellation Rule is a final agency action.**

Even if this Court deems *Biden v. Nebraska* non-controlling, the Third Mass Cancellation Rule was final under *Bennett*. "The Supreme Court has consistently taken a 'pragmatic' and 'flexible' approach to [this] question." *Union Pac. R.R.*, 162 F.4th at 918 (quotation omitted).

Beginning with the "consummation" prong, the Third Mass Cancellation Rule marked the consummation of the agency's decisionmaking. Defendants had a definite and determined plan to forgive student loans. The Change Request sent to loan servicers states that the Department of Education "is in the process of implementing" the Third Mass Cancellation Rule. Compl. Ex. D at 1. This Change Request established dates for implementation. *Id.* at 3–4. This Change Request established the contours of the program—the amounts and the forgiveness timeline. *Id.* at 5–9. And all of this was done in mandatory language, *i.e.*, "the servicer shall . . . ." *Id.* at 3–9. Nothing "indicate[s] its conclusions were tentative or interlocutory." *Brake Plus NWA, Inc. v. U.S. Dep't of Transp.*, 176 F.4th 1037, 1042 (8th Cir. 2026).

Defendants have three responses, but none negate that submission of the Change Request marked the consummation of the Department of Education's decisionmaking. First, Defendants state that these dates were "necessarily tentative" and do "not necessarily reflect when the Department [would] actually take action." First Kvaal Decl. (Doc. 35-1) ¶¶ 16–19. This does not refute that the federal government had finalized the critical aspects of the Third Mass Cancellation Rule—amounts, program contours, and forgiveness timeline; with those aspects set, "there [wa]s nothing left for the [Department of Education] to decide." *Saliba v. SEC*, 47 F.4th 961, 967–68 (9th Cir. 2022). Second, Defendants suggest that the mandatory language (e.g. "shall") of the Change Request "d[id] not, in fact, obligate (or even permit) a servicer to carry out any changes, including . . . issuing any forgiveness"—it was merely preparatory work. First Kvaal Decl. ¶ 20.

12

*But see* Black's Law Dictionary (12th ed. 2024) ("shall" means "is required to").  But the issue is not whether the Change Request could effectuate forgiveness, but whether the issuance of the Change Request "mark[ed] the 'consummation' of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178.  Third, Defendants suggest that issuing the Change Request did "not preclude the Department from . . . subsequent[ly] . . . chang[ing] parameters" and that issuing the Change Request was "not inconsistent with a genuine deliberative process."  First Kvaal Decl. ¶ 21.  However, "not [being] inconsistent with a genuine deliberative process" does not mean that the deliberative process of notice-and-comment rulemaking was still ongoing.  Moreover, as previously shown, Defendants had previously issued a Change Request simultaneously with announcing a finalized rule, for which the Supreme Court determined "Article III satisfied." *Biden*, 600 U.S. at 494.

Moreover, other documents corroborate that Defendants had "consummat[ed]" their decision to issue the Third Mass Cancellation Rule.  Despite their public silence about the upcoming rule, Defendants had pre-written celebratory emails to borrowers which loan servicers were instructed to send—when the rule would be publicly announced. *See* Compl. Ex. J.  The email began, "Congratulations!  The Biden-Harris Administration has forgiven a portion of your federal student loan(s) listed below with [SERVICER NAME]." *Id.* at 1.  And another subsequent Change Request definitively states that "[i]n September 2024, the Biden-Harris Administration will launch the Federal Student Loan Debt Initiative."  Compl. Ex. L at 2.  Again, nothing in these documents "indicate[d] [the Department of Education's] conclusions were tentative or interlocutory." *Brake Plus*, 176 F.4th at 1042.  And Defendants have never attempted to explain otherwise. *See* First Kvaal Decl. (never mentioning the pre-written email (Ex. J) and only mentioning the additional Change Request (Ex. L) (at ¶ 31) to inform the Court it had "cease[d]"

13

implementation of it but without mention of its contents); Doc. 35 (never mentioning the pre-written email (Ex. J) and only mentioning the additional Change Request (Ex. L) (at 8) for its "impact analysis" requirement and (at 15) to argue why "administrative costs to MOHELA" did not provide standing). These additional (unrebutted) documents confirm that Defendants had consummated their decisionmaking process.

Turning to the determination of rights and obligations prong of finality, the Third Mass Cancellation Rule determined the rights of millions of student-loan borrowers and obligations of loan servicers like MOHELA by altering the legal regime for student loans. This Court need look no further than *Biden v. Nebraska* to see that "direct and appreciable legal consequences" would flow from it. *Bennett*, 520 U.S. at 178. The HEROES Rule's financial impact was "directly traceable to the Secretary's plan." *Biden*, 600 U.S. at 490. So too here.

Additionally, Defendants conceded that their Change Requests altered their contracts with loan services like MOHELA. In their own words, Defendants "entered into [contract modifications] with its servicers," and as a result, "if the agency sent instructions to take certain actions," the servicers "would [be] contractually obligate[d] . . . to comply." Hr'g Tr. (Doc. 55-1) 37:1–4 (Sept. 18, 2024). A contract has "binding character," *see Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991), and modifying a contract has legal consequences as the "original contract remains in force only to the extent that it is not modified," *Curia v. Nelson*, 587 F.3d 824, 830 (7th Cir. 2009).

Therefore, the Third Mass Cancellation Rule satisfies both prongs of finality and this Court has Article III jurisdiction. *See Bennett*, 520 U.S. at 177–78.

14

**C. Defendants arguments to the contrary rest on the presumption that publication equals finality—which is not supported by caselaw.**

Defendants make a few counterarguments, but they lack merit. *See* Doc. 121 at 2–6. Defendants' fundamental problem is that they conflate finality with publication. *See id.* But this premise is not supported in the caselaw and is directly refuted by *Biden v. Nebraska*. 600 U.S. at 490–94 (holding that plaintiff States had article III standing to challenge announced rule); *see also* Doc. 35 at 14 (Defendants acknowledged that "announc[ing] a final intention" was a final agency action).

Even ignoring the dispositive nature of *Biden v. Nebraska*, Defendants' synthesis of finality and publication still fails. Plaintiff States agree that "[p]roposed rules meet neither of [*Bennett*'s] two requirements for final agency action" such that they are not subject to judicial review. Doc. 121 at 5 (quoting *In re Murray Energy*, 788 F.3d 330, 334 (D.C. Cir. 2015)). But this case involves *more* than a proposed rule—as Plaintiff States argued back in September 2024, Doc. 5 at 18–29; Doc. 45 at 6–23, and again today, *supra* at 7–13. In arguing that States cannot challenge mere proposed rules, Defendants are attacking a strawman.

In suggesting that a rule is final only if it is published, Defendants fail to cite apt authority. Defendants' citations speak only of "final agency action" and "proposed rules"—not of "publication." *See, e.g.*, *In re Murray Energy*, 788 F.3d at 333–34 (Agency "has issued only a proposed rule."); *In re Bluewater Network*, 234 F.3d 1305, 1313 (D.C. Cir. 2000) ("[A]n agency's pronouncement of its intent to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court."); *FDIC v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 24 (D.D.C. 2025) ("[P]roposed rules are not 'final agency actions.'"). But again, none of these cases state that publication is required for finality.

Given that Plaintiff States have established a final agency action under *Bennett*, Defendants' closely related Article III standing and ripeness arguments collapse. *See* Doc. 121 at 2–4. For standing (at 2–4), a final agency action makes standing "easy to establish." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citing *Lujan*, 504 U.S. at 561–62); *see also* 5 U.S.C. § 704 (providing judicial review for "final agency action"). And for ripeness, as Defendants acknowledge, "[s]imilar concerns" govern. Doc. 121 at 4; s*ee also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) ("[T]he Article III standing and ripeness issues in this case 'boil down to the same question.'" (citation omitted)). A dispute is ripe when "an administrative decision has been formalized"—or finalized—"and its effects felt in a concrete way by the challenging parties"—or plaintiff has standing. *Nat'l Park Hosp. Ass'n v. Dep'f of Inerior*, 538 U.S. 807–08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)). That is true here—for the reasons already provided.

**III. Plaintiff States stand by their original complaint.**

Perhaps realizing that all of their previously tried and rejected jurisdictional arguments fail, Defendants suggest that Plaintiff States "tried to rehabilitate the complaint by trying out a new theory" that "'Defendants planned to announce the final rule, and simultaneously, same day, order the student loan providers to cancel the loans.'" Doc. 121 at 6 (quoting Hr'g Tr. (Doc. 118) 44:10–13 (Apr. 28, 2026)). According to Defendants, the Complaint contains no "such theory." *Id.*

That is simply wrong. Plaintiff States' Complaint alleges that Defendants planned to "quietly rush this rule out too quickly for anybody to sue." Compl. ¶ 9; *accord id.* ¶¶ 77–96 (alleging how Defendants' actions were designed to "creat[e] a *fait accompli* before anybody has time to challenge the action," how Defendants "refused . . . to confirm that [they] will wait the statutorily prescribed time before implementing the Third Mass Cancellation Rule," and how Defendants "finalized a rule with a rollout plan that is maximally designed to forgive tens or

hundreds of billions of dollars without any judicial review"). Plaintiff States have been consistent in their theory of this case; there is simply no "alternative theory." *Contra* Doc. 121 at 6.

*   *   *

Stepping back, Plaintiff States acknowledge that this case does not currently "feel" like a concrete case or controversy. That is so because—as Defendants heavily emphasize—the current Administration does not plan to move forward with the Third Mass Cancellation Rule. *See* Doc. 111; Doc. 113.

But that point is irrelevant to standing. Standing is assessed "*when the complaint is filed*." *Lujan*, 504 U.S. at 569 n.4. For the reasons explained, Plaintiff States had standing *at that time*. That is why this Court entered a preliminary injunction.

That takes the Court back to Defendants' original motion and argument—that this case is *moot*. Doc. 111. But once a case is legitimately before a federal court, it is hard for a defendant to make it go away. To obtain a mootness dismissal under the voluntary cessation doctrine, Defendants must satisfy a "formidable burden." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). They must prove that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 189 (2000). As previously explained in briefing and at argument, Defendants cannot meet that burden—because it seems quite plausible that a future Democratic Administration will re-promulgate the Third Mass Cancellation Rule. Doc. 112.

Therefore, the Court should let this case proceed and decide whether the Third Mass Cancellation Rule was lawful.

17

**CONCLUSION**

For the foregoing reasons, Plaintiff States respectfully request that this Court deny Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

18

Date: July 27, 2026

**CATHERINE L. HANAWAY**
**Missouri Attorney General**

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, #77756(MO)
　*Solicitor General*
Graham D. Miller #77656 (MO)
　*Deputy Solicitor General*
Missouri Attorney General
815 Olive Street, Suite #200
St. Louis, MO 65101
(314) 340-7652 Phone
Louis.Capozzi@ago.mo.gov
Graham.Miller@ago.mo.gov
*Lead Counsel for State Plaintiffs*

**STEVE MARSHALL**
**Alabama Attorney General**

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre
　*Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130-0152
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov

**TIM GRIFFIN**
**Arkansas Attorney General**

*/s/ Autumn H. Patterson*
Autumn H. Patterson
　*Solicitor General*
Dylan L. Jacobs
　*Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-3661
Autumn.Patterson@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

Respectfully Submitted,

**JAMES UTHMEIER**
**Florida Attorney General**

*/s/ Christine K. Pratt*
Christine K. Pratt
　*Deputy Solicitor General*
Office of the Attorney General
400 S. Monroe Street
Tallahassee, Florida 32399-1050
(352) 359-6684
Christine.Pratt@myfloridalegal.com

**DREW H. WRIGLEY**
**North Dakota Attorney General**

*/s/ Philip Axt*
Philip Axt
　*Solicitor General*
North Dakota Attorney General's Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
pjaxt@nd.gov

**ANDY WILSON**
**Ohio Attorney General**

*/s/ T. Elliot Gaiser*
T. Elliot Gaiser
　*Solicitor General*
Mathura J. Sridharan
　*Solicitor General*
Office of the Attorney General
365 East Broad Street
Columbus, Ohio 43215
Phone: (614) 466-8980
thomas.gaiser@ohioago.gov

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 27, 2026, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Louis J. Capozzi III*